498 P.2d 472

The COMMUNICATIONS WORKERS OF AMERICA et al., Appellants,

v.

ARIZONA BOARD OF REGENTS, Appellee.

No. 1 CA–CIV 1565.

Court of Appeals of Arizona,
Division 1,
Department A.

June 26, 1972.

Rehearing Denied Aug. 24, 1972.

Review Denied Oct. 3, 1972.

Ward & Contreras, by Anderson D. Ward, Phoenix, for appellants.

Gary K. Nelson, Atty. Gen., Mangum, Wall & Stoops, Flagstaff, by Daniel J. Stoops, Special Assts. Atty. Gen., for appellee.

STEVENS, Presiding Judge.

The basic issue presented by this appeal is whether a labor union can compel the Arizona Board of Regents to recognize the union as the bargaining agent for the physical plant employees of Northern Arizona University. It is conceded that in the event that the above question is answered in the negative then peaceful picketing to accomplish that purpose would not be legal.

In 1969 there were approximately 145 physical plant employees, whose duties were basically to render maintenance and janitorial services, employed by Northern Arizona University. Of that number approximately 114 signed cards addressed to the Flagstaff Local 8519 of The Communications Workers of America, an A.F.L.–C.I.O. Affiliate, which cards stated, in part:

"* * * I hereby designate the Communications Workers of America, as my collective bargaining representative."

By signing these cards the employees did not thereby become full-fledged members of the union. At the time in question none had paid dues to the union. The union, through conferences, was not successful in securing union recognition by the Arizona Board of Regents as the bargaining agent for the physical plant employees.

The union desired to bargain not only with reference to wages but also to establish grievance procedures, uniformity of employment and promotion, pension rights and sick leave.

On 21 May 1969 a strike was called. After a secret written ballot, the majority of those who had signed the cards hereinbefore referred to voted in favor of the strike. A large number of the employees did not report to work and picket lines were established at the main entrances of the University. Union officials as well as physical plant personnel joined in the picket line. Not all entrances were picketed. There was construction on the campus under contracts let by the Board of Regents. The picket lines were honored by construction workers. A number of the day-to-day maintenance and sanitation requirements of the University were not attended to by reason of the absence of the physical plant employees.

The Board of Regents, as plaintiff, filed an action in the Superior Court in Flagstaff and secured a temporary restraining order restraining the picketing. The order was honored. After a hearing a preliminary injunction was issued. At the hearing the evidentiary aspect of the case was completed and not long after the issuance of the preliminary injunction the injunction was made permanent. This appeal followed.

Public instruction is strictly a governmental function in Arizona and is the subject of Article 11 of the Arizona Constitution, A.R.S. Section 1 thereof mandates the Legislature to provide a public school system including normal schools and a university. Section 2 authorizes the Legislature to establish governing boards for state institutions and Section 5 specifies that there shall be a Board of Regents for the University.

Initially there was one university and there were two normal schools, one at Tempe and one at Flagstaff. The normal schools later became State colleges. In 1958 the four-year college at Tempe became Arizona State University (See A.R.S. § 15–702.01), and in 1965 the four-year

college at Flagstaff became Northern Arizona University. (See A.R.S. § 15–702.02). In 1966 the single governing board of of the three universities was changed to the Arizona Board of Regents. (See A.R.S. § 15–729, subsec. B).

Under A.R.S. § 15–724 the Board of Regents is an autonomous body in that § 15–724, subsec. B, par. 3, provides that the Board may "sue and be sued."

There is a broad mandate to the Board contained in A.R.S. § 15–725, subsec. A. We quote this section in part with emphasis added by us:

"A. *The board shall*:

\* \* \* \* \* \*

"2. *Appoint and employ* \* \* \* such \* \* \* employees it deems necessary.

"3. *Determine the salaries* of persons appointed and employed.

\* \* \* \* \* \*

"5. *Remove* any officer or employee when in its judgment the interests of education in the state so require."

■ The Constitution and the statutes do not expressly authorize the Board of Regents to recognize and bargain with unions, nor do they expressly prohibit such action. We deem the above-referred to constitutional and statutory provisions as being a prohibition against entering into a contract with a union which would deprive the Board of Regents of the power to make the above-referred to mandated decisions.

The appellants place great emphasis upon Local 266, International Brotherhood of Electrical Workers v. Salt River Project Agricultural Improvement and Power District, 78 Ariz. 30, 275 P.2d 393 (1954). In Local 266 the Arizona Supreme Court recognized that the Power District is a municipal corporation under a then recent constitutional amendment. The Supreme Court recognized that the functions of the District are proprietary and not governmental. The Supreme Court held that the District in its proprietary capacity had the authority to enter into a union contract, a

contract which it had theretofor entered into and which it declined to renew, urging that as a municipal corporation it did not have the authority to so contract. The right to strike and the right to picket were held to be lawful incidents of a lawful contract with a municipal corporation acting in its proprietary capacity. The Supreme Court strictly limited its opinion to the fact situation then before it and concluded by saying:

"Our judgment extends only to this governmental unit. We make no decision as to the status and rights of other municipal corporations." 78 Ariz. at 44, 275 P.2d at 403.

The Supreme Court has recognized the proprietary nature of similar municipal corporations in a number of cases which are cited in the Local 266 case as well as in the cases of City of Mesa v. Salt River Project Agricultural Improvement and Power District, 92 Ariz. 91, 373 P.2d 722 (1962), and Santa Cruz Irrigation District v. City of Tucson, Ariz., 494 P.2d 24 (1972).

In Baldwin v. Arizona Flame Restaurant, Inc., 82 Ariz. 385, 313 P.2d 759 (1957), our Supreme Court stated:

"It is an equally well-established proposition of law that picketing, even when peaceful can be enjoined when such is conducted for an unlawful purpose." 82 Ariz. at 390–91, 313 P.2d at 763,

a proposition which the appellants do not contest.

As to the right of maintenance personnel of a public school to strike, we find the case of Board of Education of Community Unit School District No. 2 v. Redding, 32 Ill.2d 567, 207 N.E.2d 427 (1965), very persuasive to the end that this right to strike does not exist.

■ It is urged by the appellants that A.R.S. § 12–1808, Arizona's "Little Norris-La Guardia Act" prohibits the injunctive relief here in question. In our opinion, this section relates to proprietary businesses and by its silence the statute is not

applicable to units of government exercising governmental functions. The case of Anderson Federation of Teachers Local 519 v. School City of Anderson, 252 Ind. 558, 251 N.E.2d 15 (1969), and the opinion on rehearing, 252 Ind. 581, 254 N.E.2d 329 (1970), are persuasive to this point of view. In the Indiana and Illinois opinions numerous other cases are cited.

We expressly refrain from expressing an opinion as to whether the Arizona Board of Regents could agree to confer with a labor union. We hold that the Arizona Board of Regents cannot be compelled to recognize a union and to bargain with a union, unless the Legislature so provides.

Affirmed.

CASE, and DONOFRIO, JJ., concur.