Ben B. SHAW, Individually and as Tax Assessor-Collector of Bexar County, Texas, Appellant,

v.

PHILLIPS CRANE & RIGGING OF SAN ANTONIO, INC. and Delmar Phillips, Appellees.

No. C–1069.

Supreme Court of Texas.

May 12, 1982.

As Amended on Denial of Rehearing July 21, 1982.

Thomas Goggan, Austin, Oliver S. Heard, Jr., John Heard, San Antonio, for appellant.

Gary Pinnell, San Antonio, for appellees.

WALLACE, Justice.

This is a direct appeal from a judgment of the district court which held Article 7266[1] unconstitutional and granted a permanent injunction against sale of personal property seized by the County Tax Assessor-Collector pursuant to that statute. We reverse the judgment of the trial court and dissolve the permanent injunction enjoining the sale of personal property seized for delinquent taxes.

Ben B. Shaw, Tax Assessor-Collector of Bexar County (Shaw) filed suit against Phillips Crane & Rigging of San Antonio, Inc. and Delmar Phillips (Phillips) for delinquent ad valorem taxes for the years 1972 through 1979. While the suit was pending, Shaw levied upon and seized certain personal property owned by Phillips. Shaw proposed to sell this personalty in 20 days at a public auction as allowed by Article 7266. Phillips instituted suit to enjoin sale of the property contending that Article 7266 is unconstitutional. The trial court denied the injunction by interlocutory judgment. That judgment was appealed to the court of appeals which granted a temporary injunction to protect its jurisdiction pending a hearing on the merits. This Court upheld the court of civil appeals' action granting a temporary injunction, but specifically withheld approval of their holding that Article 7266 was unconstitutional. *State v. Querner Truck Lines, Inc.*, Tex., 615 S.W.2d 176. On appeal of the merits, the Phillips case was consolidated with that of another taxpayer whose property had also been seized. *Querner Truck Lines, Inc. v. State*, Tex.Civ. App., 607 S.W.2d 1. The consolidated cases were heard on the merits by the court of appeals which held the statute unconstitutional stating, "[N]o efficient and adequate remedy exists under Texas statutes for a taxpayer to contest either before or after seizure . . . ." 610 S.W.2d 533, 544. On remand the district court rendered judgment that the statute was unconstitutional and granted a permanent injunction against sale of the property. Shaw brought this direct appeal. The sole issue before us is whether Article 7266 is unconstitutional for lack of due process safeguards.

Phillips contends that Article 7266 does not meet the due process requirements of the United States Supreme Court as set out in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); and *North Georgia Finishing, Inc. v. DiChem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The due process requirements for seizure of property enunciated by those cases are notice of and an opportunity to contest the seizure and sale. The exceptions to those requirements as set out in *Fuentes* are: (1) a necessity to secure an important governmental or general public interest; (2) a special need for prompt action; and (3) a strict control by the state over its monopoly of legitimate force, i.e., seizure must be initiated by a governmental official who determines that it was necessary and justified in the particular instance.

We will first discuss whether sufficient notice and opportunity for a hearing is afforded by the taxation statutes which are found in Article 7145 through 7298.

A review of the above statutes reveals the following chronology of events which make up the process of rendition, assessment and a collection of ad valorem taxes. Each property owner is required to render his property, real and personal, with the County Tax Assessor not later than June 1, of each year. If the property owner fails or refuses to render his property it is the duty of the Assessor to render it for the owner. A list of all property in the county along with his evaluation is presented by the Assessor to the County Commissioner's Court,

---

1. All references are to Tex.Rev.Civ.Stat.Ann. unless otherwise indicated. This statute was repealed effective January 1, 1982.

sitting as a Board of Equalization, not later than the first Monday in June, or as soon as practical thereafter. Upon approval of this property roll by the Board of Equalization, the tax roll is prepared by applying the authorized tax rate to the property roll. The tax roll is filed with the County Clerk and is available for inspection by the public. This filing with the County Clerk is required to be made no later than October 1. The taxes as indicated on the roll become due on January 1, of the following year. Any increase in the valuation of a taxpayer's property, above that for which he renders it, can only be made by the Board of Equalization after ten days notice of such meeting.

■ A taxpayer who renders his property as required by law is thus assured that it will be assessed at that value or he will have ten days notice to appear before the Board of Equalization to contest any increase. The taxpayer is thus on constructive notice no later than October 1, of each year, of the exact amount of his taxes due.

Only by following the above procedure is there a legal tax assessed against any taxpayer. Therefore, the statutes provide due process to a taxpayer in the assessment of taxes against his property.

Phillips contends that its due process rights were violated in the seizure of its personal property for payment of the taxes.

If a taxpayer fails to pay his taxes by February 1,[2] of the year following assessment they become delinquent, and the Assessor-Collector may seize property of the taxpayer's sufficient to cover the outstanding taxes. The Collector must hold the property for ten days after seizure and then may sell the seized property at public auction. The tax statutes do not provide for a special hearing either before or after the seizure for the taxpayer to contest any possible mechanical or mathematical error made by the Assessor in calculating the amount shown on the delinquent tax rolls. It is this lack of notice and hearing which

Phillips contends deprives a taxpayer of due process.

■ Shaw contends that a taxpayer is also afforded due process because the taxpayer can pay the tax under protest and then sue for recovery. Phillips contends that this is not available inasmuch as special consent of the Legislature is necessary to sue the State for such taxes. We reject Phillips' contention. As stated above, any increase in delinquent taxes shown by the Assessor due to a mathematical miscalculation would not be a legal tax and consent of the Legislature is not required in order to sue the County Tax Assessor-Collector for recovery of an illegal tax involuntarily paid under duress. *Crow v. City of Corpus Christi*, 146 Tex. 558, 209 S.W.2d 922 (1948); *Austin National Bank v. Sheppard*, 123 Tex. 272, 71 S.W.2d 242 (1934); *The Galveston Gas Company v. County of Galveston*, 54 Tex. 287 (1881); see also, *State v. Lain*, 162 Tex. 549, 349 S.W.2d 579 (1961).

■ So long as there exists between the taxpayer and the Tax Assessor-Collector a legitimate controversy over the amount of the taxes the taxpayer may bring a suit for declaratory judgment to determine the accuracy of the tax computations and thus the legality of the taxes. Also, the taxpayer may bring a suit to enjoin the collection of the alleged illegal taxes pending a hearing on the legality of same. We hold these remedies meet the due process requirements in the seizure and sale of property as set out in *Fuentes, Sniadach,* and *North Georgia Finishing Co., Inc.*

A further reason for holding Article 7266 constitutional is that collection of ad valorem taxes by the County Tax Assessor-Collector falls within the exceptions enunciated by the United States Supreme Court in that the timely and efficient collection of ad valorem taxes secures an important governmental function; there is a special need for taxes to be paid when due in order that the County Commissioner's Court may meet the

2. Under the new Tax Code Ann. Sec. 31.02 (1981), taxes are now expressly delinquent as of February 1.

financial obligations of the county; and the seizure and sale of property to pay delinquent ad valorem taxes are under the control of a governmental officer, to-wit the County Tax Assessor-Collector, who makes the determination of the necessity and justification of seizure in a particular instance.

The judgment of the trial court is reversed and the injunction against sale of the property in question by the Bexar County Tax Assessor-Collector is dissolved.