38 P.3d 1218

**ARIZONA SOCIETY OF PATHOLO- GISTS, an Arizona corporation; Mallon–Alvarez Pathology Group, P.C., an Arizona corporation, Plaintiffs–Appellants,**

v.

**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, a State agency; Phyllis Biedess, in her official capacity as Director of AHCCCS, Defendants–Appellees.**

No. 1–CA–CV 01–0029.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 22, 2002.

**554**

Gammage & Burnham, P.L.C. By John R. Dacey, Cameron C. Artigue, Phoenix, Attorneys for Plaintiffs–Appellants.

Johnston & Kelly, P.L.C. By Logan T. Johnston, Phoenix, Attorneys for Defendants–Appellees.

Snell & Wilmer, L.L.P. By Barry D. Halpern, Andrew F. Halaby, Phoenix, Attorneys for Amicus Curiae Arizona Medical Association.

Sidley Austin Brown & Wood By Jack R. Bierig, Richard D. Raskin, Chicago, IL, Attorneys for Amicus Curiae College of American Pathologists.

1. The AHCCCS program pays for health care for Arizona's indigent population. Most of this care is delivered through private health plans that provide covered services to AHCCCS beneficiaries enrolled in those plans.

2. The Society is a professional organization dedicated to promoting the interests of its member pathologists.

## OPINION

RYAN, Judge.

¶ 1 This litigation concerns Arizona Health Care Cost Containment System's ("AHCCCS")[1] compensation of hospital-based pathologists for "indirect services." We conclude that AHCCCS did not have a lawful basis through a specific, applicable statute or properly promulgated rule for denying coverage of indirect pathology service claims. We therefore reverse the trial court's grant of summary judgment to AHCCCS on the claims of the Arizona Society of Pathologists ("Society")[2] and Mallon–Alvarez Pathology Group, P.C. ("Mallon–Alvarez").[3]

## BACKGROUND

¶ 2 Pathologists are physicians who specialize in the analysis of bodily fluids and tissues. Pathology sometimes requires a physician's personal examination of a specimen or test result. Such examinations are considered "direct services." But pathologists who direct hospital laboratories also perform a variety of "indirect services" to ensure that test results are timely and reliable, such as medical direction and supervision, quality assurance, and consultation.

¶ 3 Billing for indirect services (or "professional component billing") is a practice accepted by some private insurers as an administrative convenience. Under this method, pathologists bill a nominal fixed fee for each lab test, regardless of the amount of time the pathologist devotes to that particular test. This type of billing spreads costs across all patients. It avoids the need to keep records for billing purposes about which single test results required, for example, further testing to determine the reason for an anomaly.

3. Mallon–Alvarez is a pathology group that provides services to indigent patients covered under the AHCCCS program. We refer to Society and Mallon–Alvarez collectively as "Plaintiffs."

Professional component billing essentially allows pathologists to charge a portion of their overhead to all patients.

¶ 4 AHCCCS circulates a newsletter called *Claims Clues* to those in the field of billing for health care claims. The June 1999 issue of *Claims Clues* contained an AHCCCS policy statement announcing that AHCCCS followed Medicare guidelines with respect to the reimbursement of pathology claims.[4] The Medicare guidelines allow pathologists to bill for direct services, but not indirect services. 42 U.S.C. § 1395xx(a)(1) (1994); 42 C.F.R. § 405.515 (2000).

¶ 5 Applying these Medicare guidelines, a 1998 AHCCCS audit of hospital-based pathologists' claims revealed more than $1 million in "erroneous" pathology payments made by AHCCCS health plans to pathologists from January 1994 through December 1997. AHCCCS recommended that its health plans recoup payments for indirect services, stop paying future claims for indirect services, and refer cases in which pathologists sought payment for indirect services for civil monetary penalties or possible criminal prosecution. Four AHCCCS health plans subsequently initiated administrative actions or litigation against various pathologists, including Mallon–Alvarez.

¶ 6 Plaintiffs maintained that AHCCCS had improperly changed its policy regarding payment of pathology claims and that claims for indirect services were fully reimbursable. In September 1999, Plaintiffs filed a Petition for Rulemaking and Review of Substantive Policy Statement with AHCCCS in accordance with Arizona Revised Statutes ("A.R.S.") section 41–1033 (1999).[5] The petition asked AHCCCS to "[r]eview the sub-stantive Policy Statement ... regarding pathology claims for clinical laboratory services, and determine that such Policy Statement constitutes a rule that has not been promulgated as such, and is therefore null and void." Plaintiffs also asked AHCCCS to "[m]ake a final rule specific to pathology fees ... that prescribes under what circumstances, if any, AHCCCS will follow Medicare criteria."

¶ 7 The AHCCCS Director denied Plaintiffs' petition. AHCCCS concluded that the Policy Statement merely applied existing law to the facts particular to pathology services rendered in a hospital setting. Specifically, AHCCCS stated that indirect services could not be compensated because A.R.S. § 36–2918(A) (1993) made it unlawful to bill AHCCCS for services not provided, and Arizona Administrative Code ("A.A.C.") Rule R9–22–712(A)(2) (1997) deemed the services in question provided by the hospital, not the physician.

¶ 8 Plaintiffs appealed this decision to the Governor's Regulatory Review Council ("GRRC")[6] under A.R.S. § 41–1033. Plaintiffs asked GRRC to determine that the Policy Statement was an improperly promulgated rule. AHCCCS opposed this appeal arguing, among other things, that the Policy Statement was merely an interpretation of A.R.S. § 36–2918.

¶ 9 GRRC reversed AHCCCS's decision, finding that the Policy Statement and "the AHCCCS practice of following Medicare guidelines" was a "rule" as defined by A.R.S. § 41–1001 (1999). Under A.R.S. § 41–1033(C), "[i]f the [GRRC] ultimately decides the agency practice or statement constitutes

---

4. The Policy Statement provided, in pertinent part:

 **Physicians Limited in Billing Pathology Codes**
 In accordance with Medicare guidelines, physicians may bill only a limited number of CPT codes for pathology services performed in a hospital setting. AHCCCS follows Medicare guidelines and will only pay physicians and other individual practitioners for the medical interpretation of a pathology test performed at a hospital. AHCCCS does not reimburse physicians for the technical portion of tests performed at hospitals or for any indirect costs, such as supervising the laboratory.

5. The College of American Pathologists and the Arizona Medical Association each submitted a brief as *amici curiae* supporting Plaintiffs' petition and have each submitted an *amici* brief supporting Plaintiffs' appeal.

6. GRRC is an executive body established by A.R.S. § 41–1051 (1999), which exercises various supervisory responsibilities over state administrative rules. *See* A.R.S. §§ 41–1051 to–1057 (1999). It has the authority to determine whether an agency practice or substantive policy statement constitutes a rule. A.R.S. § 41–1033.

a rule, the practice or statement shall be considered void."

¶ 10 Following the GRRC decision, Plaintiffs asked AHCCCS to advise its health plans that the Policy Statement was void, to provide coverage for indirect services, and to promulgate a formal rule regarding payment of pathology services. Plaintiffs also asked the health plans to withdraw their recoupment claims. Some of the plans refused to do so, and AHCCCS continues to deny coverage for indirect services, relying on A.R.S. § 36–2918.

¶ 11 Plaintiffs then filed this lawsuit against AHCCCS. The lawsuit sought a declaratory judgment confirming GRRC's decision that the Policy Statement is an illegal and unenforceable rule, and an injunction prohibiting AHCCCS's continued enforcement of the Policy Statement and ordering it to pay for indirect services. AHCCCS filed a motion to dismiss, arguing lack of subject matter jurisdiction and failure to state a claim. Plaintiffs opposed that motion, and filed a motion for summary judgment. AHCCCS then filed a cross-motion for summary judgment, relying on A.R.S. § 36–2918(A) as support for its denial of claims for indirect services.

¶ 12 The trial court decided to treat AHCCCS's initial motion to dismiss as a motion for summary judgment, and ordered supplemental briefing on certain issues by the parties. After the supplemental briefing, the trial court denied Plaintiffs' motion for summary judgment, and granted AHCCCS's cross-motion for summary judgment. The court ruled, alternatively, that it was without subject matter jurisdiction to grant Plaintiffs' requested relief; that Plaintiffs had failed to state a claim for relief; that injunctive relief was inconsistent with the AHCCCS statutory scheme and A.R.S. § 12–1802 (1994); that declaratory relief was inappropriate; and that billing of indirect services in the hospital setting is not a bill for "an item or service provided as claimed" under A.R.S. § 36–2918. The court also declined to accept jurisdiction of the case if it was recast as a special action. Plaintiffs appealed from that ruling raising four issues, which we address in turn.

## DISCUSSION

### I. Jurisdiction

¶ 13 The superior court concluded it lacked subject matter jurisdiction over Plaintiffs' complaint. We review *de novo* a dismissal for lack of jurisdiction. *Harris v. Harris,* 195 Ariz. 559, 561, ¶ 6, 991 P.2d 262, 264 (App.1999).

¶ 14 Plaintiffs' action originated as a GRRC proceeding under A.R.S. § 41–1033(B) to determine whether the Policy Statement was an invalid rule. GRRC concluded that it was. Once GRRC concludes that an "agency practice or statement constitutes a rule, the practice or statement shall be considered void." A.R.S. § 41–1033(C). When AHCCCS continued to deny claims for indirect pathology services, Plaintiffs filed this lawsuit to enforce the GRRC decision.

¶ 15 AHCCCS argues that A.R.S. § 41–1033(D) precludes Plaintiffs from appealing the GRRC decision. At the time this action was initiated, that statute provided: "A decision by the agency pursuant to this section is not subject to judicial review." A.R.S. § 41–1033(D). AHCCCS contends that in *Phoenix Children's Hospital v. Arizona Health Care Cost Containment System Administration,* 195 Ariz. 277, 987 P.2d 763 (App.1999), this court relied on that statute to hold that the superior court is precluded from re-examining the GRRC's determination that an agency practice or policy statement does, or does not, constitute an invalid rule.

¶ 16 But neither A.R.S. § 41–1033(D) nor the *Phoenix Children's* decision applies here. Those authorities pertain to a party's attempt to circumvent the mandate of former A.R.S. § 41–1033 [7] that the relevant agency or the GRRC, not the courts, decide "wheth-

---

7. After *Phoenix Children's* was decided, the legislature amended A.R.S. §§ 41–1033(D) and 41–1034 (1999) to allow persons challenging an agency practice or policy as an invalid rule to seek declaratory relief under A.R.S. § 41–1034 either in lieu of or in addition to the agency or GRRC procedure set forth in A.R.S. § 41–1033. *See* A.R.S. § 41–1033(D), amended by 2000 Ariz. Sess. Laws, ch. 374, § 2; A.R.S. § 41–1034(B), amended by 2000 Ariz. Sess. Laws, ch. 374, § 3.

er an agency practice or policy constitutes a 'rule' that must be promulgated under the APA rulemaking process." *Phoenix Children's,* 195 Ariz. at 281, ¶ 14, 987 P.2d at 767; *see* A.R.S. § 41–1033.

 ¶ 17 Here, Plaintiffs are not challenging the GRRC's decision that the Policy Statement constitutes an invalid rule. Rather, they are trying to enforce that decision. Accordingly, the authorities relied upon by AHCCCS are inapplicable.

¶ 18 Plaintiffs' superior court action was based on a provision of the Arizona Administrative Procedure Act ("APA"), A.R.S. §§ 41–1001 to–1067 (1999). That act allows parties to seek relief from certain administrative rules through an action under the Uniform Declaratory Judgments Act.[8] *See* A.R.S. § 41–1034(A). The relevant APA provision permits "[a]ny person who is ... affected by a rule" to "obtain a judicial declaration of the validity of the rule by filing an action for declaratory relief in the superior court in Maricopa County in accordance with [the Declaratory Judgments Act]." A.R.S. § 41–1034(A). Once GRRC declared the Policy Statement a "rule," this APA provision allowed Plaintiffs to challenge AHCCCS's continued enforcement and the validity of that rule by way of a declaratory judgment action. *See id.; see also Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.,* 198 Ariz. 533, 537, ¶ 22, 11 P.3d 1072, 1076 (App.2000) ("Parties may seek declaratory relief against an agency through A.R.S. section 41–1034 ... [when] the plaintiff asserts that a rule is invalid due to an agency's failure to comply with the applicable statutory procedures when promulgating the rule."). The superior court had subject matter jurisdiction over this case.

## II. Plaintiffs' Claim For Declaratory Relief

 ¶ 19 The trial court alternatively concluded that even if it had jurisdiction, Plaintiffs had failed to present a claim upon which relief could be granted. Dismissals for failure to state a claim are disfavored and should not be granted unless it appears cer-

tain that a party would not be entitled to relief on its asserted claim under any state of facts susceptible of proof. *Folk v. City of Phoenix,* 27 Ariz.App. 146, 151, 551 P.2d 595, 600 (1976). In reviewing such dismissals, we accept the allegations of the complaint as true. *Savard v. Selby,* 19 Ariz.App. 514, 515, 508 P.2d 773, 774 (1973). To plead a viable claim under the Declaratory Judgments Act, one need merely establish a protectible interest and a justiciable controversy over that interest between the parties. *See Rivera v. City of Douglas,* 132 Ariz. 117, 119, 644 P.2d 271, 273 (App.1982) (for declaratory relief, plaintiff must show dispute over protectible interest); *Thomas v. City of Phoenix,* 171 Ariz. 69, 74, 828 P.2d 1210, 1215 (App.1991) (declaratory judgment action must be based on actual controversy).

¶ 20 AHCCCS asserts there was no controversy as it was not contesting the GRRC's conclusion that its Policy Statement was an invalid rule, nor was it continuing to enforce that Policy Statement. While AHCCCS acknowledges it still refuses claims for indirect services, it states that its refusal is based on A.R.S. § 36–2918, not the Policy Statement. That statute provides, in pertinent part the following:

A. No person may present or cause to be presented to this state or to a provider that contracts with [AHCCCS] ...

1. A claim for a medical or other item or service that the person knows or has reason to know was not provided as claimed.

A.R.S. § 36–2918(A)(1). We disagree with AHCCCS's assertion for several reasons.

¶ 21 First, we are unpersuaded by AHCCCS's reliance on A.R.S. § 36–2918. That statute is an anti-fraud statute that authorizes civil monetary penalties for the submission of false claims. *See* A.R.S. § 36–2918(B). The statute is a penalty law; it does not define the scope of covered medical services or discuss reimbursement to providers. Contrary to AHCCCS's assertions, it is not patently clear from A.R.S. § 36–2918(A)(1) that indirect pathology services are "services not rendered." In fact, other agencies have recognized a need to promul-

gate specific rules regarding claims for indirect pathology services despite the existence of similar anti-fraud statutes. For instance, the Arizona penalty statute tracks the federal civil monetary penalties law. Yet the federal government still promulgated a specific rule regarding which pathology services it covered. *Compare* A.R.S. § 36–2918 *with* 42 U.S.C. § 1320a–7a (Supp.v.1999); *see also* 42 C.F.R. §§ 415.102, 415.130 (2000). Similarly, the Indiana Medicaid program covered claims for indirect pathology services until it adopted express rules that followed Medicare guidelines on the issue. *Ind. State Dep't of Pub. Welfare v. Nucleopath, Inc.*, 536 N.E.2d 1045, 1048–49 (Ind.App.1989). Section 36–2918 does not in and of itself disallow payment for indirect pathology services.

¶ 22 Second, AHCCCS argued to GRRC its reliance on A.R.S. § 36–2918, rather than the Policy Statement. It insisted that a rule was not required on the pathology services issue as it was already regulated by the statute. But GRRC implicitly rejected the argument that the statute was self-executing in concluding that the Policy Statement was an invalid rule. *See* A.R.S. § 41–1001(17) (defining a "Rule" as "an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency.").

¶ 23 Third, AHCCCS's reliance on the statute as the basis for denying claims for indirect pathology services is belied by the statute's existence at the time that AHCCCS, and its contract providers, paid numerous claims for such services. It is possible that some or all of these claims were paid by mistake, as AHCCCS insists. But the multitude of claims at issue indicates that there was confusion among pathologists, AHCCCS contract providers, and AHCCCS regarding pathology services covered.[9]

¶ 24 For these reasons, we conclude that Plaintiffs' complaint did present a justiciable controversy regarding AHCCCS's continued enforcement of the Policy Statement. A contrary holding would nullify both the rulemaking requirements of the APA and the role

assigned to GRRC. The essence of GRRC's decision is that AHCCCS may not issue a rule interpreting A.R.S. § 36–2918 under the guise of a Policy Statement. Rather, it must comply with the rulemaking provisions of the APA. Allowing AHCCCS now to rely on the statute as a basis for denying claims for indirect pathology services would enable it to evade the requirements of the APA and disregard the GRRC's ruling.

### III. The Trial Court's Summary Judgment Ruling

█ ¶ 25 The trial court granted summary judgment for AHCCCS finding that billing of indirect pathology services was a bill for an item or service "not provided as claimed" under A.R.S. § 36–2918. As discussed in detail above, we disagree with this conclusion.

¶ 26 Further, as noted, the trial court's ruling infringed upon GRRC's decision, which implicitly rejected this contention. AHCCCS correctly observes that the interpretation or validity of the statute was not the primary question before GRRC. Instead, GRRC was focused on whether the Policy Statement constituted a rule. However, AHCCCS itself raised this issue in the GRRC proceedings by relying on the statute as the basis for its denial of coverage for indirect pathology service claims and by arguing that the Policy Statement merely reflected the limitation on coverage set forth in that statute. In concluding that the Policy Statement was an invalid rule, GRRC apparently rejected this argument and found that AHCCCS's ban on covering indirect pathology services was not adequately set forth in the statute or in any properly promulgated rule. The trial court's ruling effectively overturned GRRC's decision.

### IV. Injunctive Relief

█ ¶ 27 The trial court found that Plaintiffs were not entitled to injunctive relief as such relief was inconsistent with the AHCCCS statutory scheme and with A.R.S. § 12–1802, which prohibits enjoining the exercise of a public office in a lawful manner. The trial court's reasoning is erroneous given

---

9. In addition, prior AHCCCS regulations and fee schedules allowed reimbursement for significant-

ly more pathology procedures than the current policy.

our conclusion that the GRRC decision effectively determined that AHCCCS did not have a lawful basis through a specific, applicable statute, or properly promulgated rule for denying coverage of indirect pathology service claims. Accordingly, Plaintiffs were entitled to injunctive relief ordering AHCCCS to cease enforcement of its Policy Statement and to require payment for properly submitted claims for indirect pathology services pending AHCCCS's promulgation of a rule barring such coverage or its identification of an existing statute or rule specifically disallowing coverage for such services.

## CONCLUSION

¶ 28 We reverse the summary judgment in favor of AHCCCS and remand for entry of judgment in favor of Plaintiffs.

¶ 29 Plaintiffs seek an award of their fees on appeal under A.R.S. § 12–348(A)(3) (2000). Plaintiffs also preserved their request for fees in the trial court in the event this court reversed that decision. An award of attorneys' fees is mandated under that statute for actions, such as this matter, brought under A.R.S. § 41–1034. We therefore grant Plaintiffs' fee request contingent upon their compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and REBECCA WHITE BERCH, Judge.