720 P.2d 115

**TURNKEY CORPORATION, an Arizona corporation,
Plaintiff/Appellee/Cross-Appellant,**

v.

**Jack J. RAPPEPORT,
Defendant/Appellant/Cross-Appellee.**

**No. 2 CA–CIV 5506.**

Court of Appeals of Arizona,
Division 2, Department A.

Feb. 13, 1986.

Review Denied June 3, 1986.

King & Frisch, P.C. by James C. Frisch, Tucson, for plaintiff/appellee/cross-appellant.

Lesher & Borodkin, P.C. by Robert O. Lesher, Tucson, for defendant/appellant/cross-appellee.

**OPINION**

FERNANDEZ, Judge.

Appellee Turnkey Corporation is an Arizona corporation and a licensed contractor whose president is James Schibley. Appellant Jack Rappeport is the owner of a home on Kleindale Street in the Winterhaven area of Tucson which he purchased in June 1982, an unimproved lot on Edison Street in Tucson and a cabin on Mt. Lemmon. Turnkey sued Rappeport for breach of contract, quantum meruit and unjust enrichment. Rappeport's answer denied liability and claimed setoffs for inaccurate and fraudu-

lent billings. He counterclaimed for fraud, conversion and negligence. After a lengthy court trial, the court found that Rappeport had requested Turnkey to perform certain work on the Mt. Lemmon cabin and awarded it $4,000. Turnkey was also awarded $1,773.65 for a set of plans prepared at Rappeport's request for the property on Edison Street. Finally, the court found that Rappeport had requested Turnkey to refurbish the Kleindale home and awarded it $42,000 for the remodeling. In its findings of fact and conclusions of law, the court found that there was no express contract between the parties on any of the projects. It further found that Rappeport had requested Turnkey to perform the projects, that Turnkey had expended labor and materials in performing them and that it was entitled to recover on the basis of quantum meruit. The issues raised by counterclaim were considered by the court in determining the amount of recovery.

On appeal Rappeport contends that the judgment in quantum meruit was not supported by the evidence and the law of Arizona on the question of damages in an action for unjust enrichment. Arguing that there cannot be a recovery under the theory of unjust enrichment unless the defendant has been enriched, he contends that Turnkey failed to prove that Rappeport benefited from the work done and that Turnkey's recovery should not be based on either the cost to Turnkey or the value of each item of work done. We disagree and affirm.

Turnkey has cross-appealed, contending 1) the trial court erred in not finding that an oral contract had been entered into, 2) that if recovery is affirmed on quantum meruit, then the recovery should bear a reasonable relation to the materials and services provided so that it was error to award less than actual costs and 3) that Turnkey should have been awarded attorney's fees under either theory. We find that the evidence supported the judgment and that the attorney's fee determination was proper.

Rappeport, an attorney and former law professor at the University of Arizona, first contacted James Schibley in November 1981 about installing log siding on Rappeport's Mt. Lemmon cabin. That job was completed by Turnkey on a cost plus 10% overhead plus 10% profit plus sales tax basis, as was a project to build shelving at Rappeport's law office. Thereafter Schibley acted as Rappeport's expert witness in a termite damage lawsuit in which the cost plus 10% plus 10% plus sales tax method was used in estimating the required repairs. Turnkey also built two triplexes for Rappeport for $176,000 which was paid on the same cost plus basis. No written contract was ever signed between the parties on any of the projects involved.

In June 1982 Rappeport contacted Schibley about remodeling his newly-purchased home on Kleindale Street. Rappeport wanted extensive remodeling done immediately, and Schibley testified Rappeport told him he wanted the best of everything in the house. Schibley testified he told Rappeport that the project would be done on a cost plus basis the same as the other projects. He told Rappeport he would furnish copies of all time cards, invoices and the cost breakdown by the 25th of each month and that payment was due on the 5th day of the following month so that the subcontractors and employees would be paid by the 10th. Turnkey commenced the remodeling and four periodic billings were delivered. Rappeport paid the first three but not the fourth, which was for $56,-456.35. The failure to pay that billing was one of Turnkey's claims in this lawsuit.

Turnkey also sought $5,600.65 for additional remodeling work on the Mt. Lemmon cabin. In July 1982 Turnkey had bought a lot on Edison Street in Tucson for Rappeport and, as its third claim, sought $1,875.06 for preparing a set of plans for a house that Rappeport wanted to build on that property.

Rappeport had paid $88,000 for the Kleindale home, and he testified he paid Turnkey over $54,000 before he refused to pay the final billing. He declined to pay

more, believing he had an express contract that the work would be completed for not more than $50,000. He further testified he paid other contractors $29,000 for additional remodeling and, on completion of the work, had over $171,000 invested in the home. Turnkey's witnesses testified as to the reasonableness of the cost of the work and as to the work performed. Rappeport's witnesses testified in defense of the express contract count that all the work could have been done for the $50,000 limit and testified as well on reasonable cost of the work. In addition, Rappeport called a real estate broker and a real property appraiser who testified that the reasonable value of the property after the improvements was only $108,000 to $110,000.

Both parties have cited the recent case of *Murdock-Bryant Construction, Inc. v. Pearson*, 146 Ariz. 48, 703 P.2d 1197 (1985) as persuasive authority on the appropriate measure of damages. In that case, a subcontractor brought an action for rescission and restitution because of the general contractor's misrepresentations as to the amount of rock to be blasted. Judgment was entered against the contractor as well as against an individual and a corporation who were joint venturers with the contractor. The court held that the joint venturers were not responsible for the contractor's misrepresentation, but that restitution was proper against the joint venturers because a benefit had been conferred on them. On remand the court left the measure of damages to the trial judge, noting that the measure was different as to different parties because the joint venturers were not liable for any misrepresentations.

■ Unlike *Murdock-Bryant*, in the present case there was no misrepresentation involved, and the project was finished before the dispute arose. The issues here revolved around Turnkey's contention that it was to be paid on a cost plus basis and that Rappeport had requested extensive remodeling work that cost more than if the house had been built from scratch. Although Rappeport does not deny that he requested the work to be done, he claims that he set a top limit on the total expenditure and that Turnkey's expended costs were not reasonable. These issues were determined by the court which found for Turnkey but which allowed an offset for defects and negligent work and set a reasonable value for the work done. We find ample evidence to support the court's finding of reasonable value for the services performed.

Rappeport contends that the benefit to the recipient as measured by the resulting market value should be the measure of damages in an action for restitution. Because the value of the house is much less than the costs incurred by Turnkey in remodeling it, he contends he should not pay anything since he has received no benefit. *Spitalny v. Tanner Construction Co.*, 75 Ariz. 192, 254 P.2d 440 (1953), overruled on other grounds, *Schwartz v. Schwerin*, 85 Ariz. 242, 336 P.2d 144 (1959). The situation here is similar to an example given in D. Dobbs, Handbook on the Law of Remedies § 4.5, at 263 (1973) as follows:

"But suppose the contract price does not govern the case because the contract is rescinded for mistake or fraud, and the defendant has improvements he bargained for. The labor and materials are reasonably worth $10,000, but the land value is increased only by $5,000, because the work ordered by the defendant is ill-suited to the land. In this case the defendant may well be charged with the reasonable value of the goods and services he bargained for, even though this exceeds the increase in his land value."

Here Rappeport asked for improvements, and the trier of fact could clearly find that he put a value on them that may well be independent of the economic value they contribute to his land.

The Arizona Supreme Court said in *Murdock-Bryant*, supra, that restitution is not confined to any particular circumstances or set of facts and is "a flexible, equitable remedy available whenever the court finds that 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity' to make compen-

sation for benefits received." 146 Ariz. at 53, 703 P.2d at 1202. "[W]hen one is employed in the services of another for any period of time, the law implies a promise to pay what such services are reasonably worth...." *Dey v. Quinn,* 21 Ariz. 265 at 266, 187 P. 578 at 579 (1920); see also *Hegel v. O'Malley Insurance Co.,* 122 Ariz. 52 at 57, 593 P.2d 275 at 280 (1979). We find that the evidence supports the judgment as to all three claims. We find no support for Rappeport's contentions, particularly his unjust enrichment theory.

### Turnkey's Cross-Appeal

■ Turnkey contends that the court erred in not finding that an oral contract existed. The court made the following pertinent findings of fact and conclusions of law:

"5. On or about June 20, 1982, the Defendant JACK RAPPEPORT requested of the Plaintiff to refurbish the Kleindale home he recently purchased. The Defendant JACK RAPPEPORT also requested the Plaintiff's President, JAMES SCHIBLEY, to find a close-in lot to build a house. The Defendant JACK RAPPEPORT also wanted the Plaintiff to proceed with a recreation building on his Mt. Lemmon property.

\*     \*     \*     \*     \*     \*

"7. Plaintiff proceeded to commence refurbishing the Kleindale residence.

"8. In addition, Plaintiff proceeded to work on the plans for the recreation building on Mt. Lemmon, including the demolition of the existing structures on the Mt. Lemmon property.

"10. There was no express contract between the Plaintiff and the Defendant to perform any of the work set forth on the Kleindale property, the Mt. Lemmon property or the Edison Street property.

"11. On or about August 9, 1982, the Plaintiff submitted an invoice along with attached cost sheet for the first phase of work done on the Kleindale property in the amount of $7,790.34, which included on the cost sheet a 10% overhead 10% profit. Defendant JACK RAPPEPORT

paid that sum to the Plaintiff a short time thereafter.

"12. On or about September 7, 1982, Exhibit '2' which consisted of an invoice and cost sheets attached thereto, was submitted to the Defendant JACK RAPPEPORT in the sum of $26,443.75. Approximately two days thereafter, Defendant JACK RAPPEPORT gave to Plaintiff a check for the full amount set forth in Exhibit '2'.

"13. On or about October 6, 1982, the Defendant JACK RAPPEPORT received a third invoice which was set forth as Exhibit '3' with attached cost sheets showing an amount of $19,829.49. The Defendant JACK RAPPEPORT paid that amount to the Plaintiff.

"14. A final invoice was presented to the Defendant JACK RAPPEPORT as set forth on Exhibit '4' in the sum of $56,827.25. The Defendant JACK RAPPEPORT has failed and refused to pay that sum to the Plaintiff claiming the Defendant did not owe the Plaintiff anything further.

"15. The Plaintiff performed work on the Mt. Lemmon property consisting of a complete set of plans for the recreation building on that property. The Defendant JACK RAPPEPORT has refused to pay the Plaintiff any sum of money on that project.

"16. The Plaintiff prepared a set of plans for the property on Edison Street, but the Defendant JACK RAPPEPORT has refused to pay the Plaintiff for those plans.

"17. Plaintiff expended labor and materials in performing the three projects on behalf of the Defendants.

### "CONCLUSIONS OF LAW

"1. There was no meeting of minds among the parties as to the terms of a contract, and therefore, no express contract existed.

"2. Plaintiff is entitled to recover on the basis of quantum meruit.

"3. Issues raised by the Counterclaim have been considered by the Court in

determining the amount of recovery in quantum meruit."

We find that the court erred in concluding that no express contract existed. The evidence and the court's findings of fact clearly support the existence of a contract. It is clear that Rappeport requested the services. It is also clear that the contract was fully performed by Turnkey and that the only term that was disputed was the basis for payment.

The facts in this case are similar to those in *Swingle v. Myerson,* 19 Ariz.App. 607, 509 P.2d 738 (1973) in which this court held as follows:

"Appellant contends that since the court found no 'express contract' appellee cannot recover. We do not agree. It is clear that the judgment was based on an *implied contract.* There is no difference in the legal effect between an express contract and an implied contract. *All* contracts are express contracts. But there are different modes of expressing assent. 1 Corbin on Contracts § 18, p. 39 (1963). If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, *interpreted* in the light of the subject matter and the circumstances, then the contract is an implied one. These terms, however, do not denote different kinds of contracts, but merely have reference to the evidence by which the agreement between the parties is shown." (Emphasis in original.) 19 Ariz.App. at 609, 509 P.2d at 740.

The court then concluded that quantum meruit was the proper measure of the value of the services agreed upon. That was also true here. We accordingly amend the conclusions of law to conform with the trial court's findings of fact. We note that finding of fact number 10 is in reality a conclusion of law and is basically no different than the first conclusion of law. We accordingly amend it as well.

■ Turnkey next contends that the amount of recovery in quantum meruit

should bear a reasonable relationship to the actual materials and services provided and should not have been reduced by the trial court. We find that Rappeport's evidence supported a lesser amount than the amount sought and, together with the counterclaim issues, were matters to be resolved by the trier of fact. We find no error in the court's finding as to a fair and reasonable award.

■ Finally, Turnkey contends that it should have been awarded attorney's fees under either theory of recovery. We disagree since that is a matter for the discretion of the trial court. We find no abuse of discretion in the denial of attorney fees under A.R.S. § 12–341.01(A). *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 694 P.2d 1181 (1985).

The appellee will be awarded attorney's fees on appeal as requested upon filing a statement of costs pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S. (1985 Supp.), and *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

Judgment affirmed as modified.

LACAGNINA, J., and E.D. McBRYDE, Superior Court Judge, concur.

NOTE: Judge E.D. McBRYDE was called to sit and participate in the determination of this decision.