937 P.2d 375

**UNIVERSITY MEDICAL CENTER, CORPORATION, a non-profit Arizona corporation, Plaintiff/Appellee/Cross–Appellant,**

v.

**PIMA COUNTY, a political body of the State of Arizona, Defendant/Appellant,**

and

**The City of Tucson, a political body of the State of Arizona, Defendant/Cross–Appellee.**

No. 2 CA–CV 96–0103.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 17, 1996.

Review Denied May 20, 1997.

454

Gammage & Burnham by Richard B. Burnham, Cameron C. Artigue and Christo-

pher A. Womack, Phoenix, for Plaintiff/Appellee/Cross-Appellant.

Stephen D. Neely, Pima County Attorney by JoAnn Sheperd, Tucson, for Defendant/Appellant.

Slutes, Sakrison, Grant, Hill & Rubin, P.C. by Michael B. Smith, Tucson, for Defendant/Cross-Appellee.

## OPINION

HATHAWAY, Judge.

Pima County appeals the granting of summary judgment ordering it to pay appellee University Medical Center (UMC) $160,-953.27 plus interest for hospital expenses incurred on behalf of Miguel Lara (Lara), who, while committing a felony, was wounded by a Tucson Police Officer. Lara was then transported directly to UMC, where he remained hospitalized under Tucson Police guard for approximately two months. Upon discharge, Lara was transported to the county jail and incarcerated. The county argues that it should not be held responsible for Lara's medical expenses because there was no arrest or charge, nor was Lara incarcerated until after his hospitalization ended. The county argues, in the alternative, that if it is liable, it should not be charged the "full billed" amount (non-discounted charges) for Lara's hospitalization. We affirm the trial court's decision.

The trial court awarded judgment to UMC based on A.R.S. §§ 11–601(3) and 31–121(C). Section 11–601 states that county charges are:

> 3. Expenses necessarily incurred in the support of persons charged with or convicted of crime and committed therefor to the county jail.

Section 31–121(C) provides in pertinent part:

> A person who is arrested by a peace officer employed by a city or town and thereafter charged in the superior court or a justice of the peace court may be housed in a county jail. The costs of incarceration are a county expense.

■ The county contends that it was not responsible for Lara's medical expenses under the cited statutes until he was arrested,

charged and committed to or housed in jail. We disagree. Section 11–601(3) does not limit its application to expenses necessarily incurred after the charging, conviction and commitment to jail. We presume, and the parties do not dispute, that Lara was charged within 48 hours of his arrest as required by Rule 4.1(b), Ariz.R.Crim.P., 17 A.R.S. But for the severity of Lara's injuries, he would have been taken to jail immediately. That it was imprudent for the officers to stop at the jail prior to going to the hospital does not relieve the county of its obligation.

 The county further argues that mere custody (Lara was chained to his hospital bed and guarded by a Tucson police officer at all times) is not "incarceration," and because Lara was not guarded by county sheriff personnel during his hospital tenure, his expenses are not the county's obligation. In § 31–121(C), Arizona has adopted a "nature of the offense" rule, that "[r]esponsibility for prisoner maintenance depends upon the nature of the offense committed, not upon which court has jurisdiction over the prisoner...." *Mohave County v. City of Kingman,* 160 Ariz. 502, 505, 774 P.2d 806, 809 (1989). Lara was wounded while committing a felony, and arrested, charged and incarcerated for his commission of that felony, a state offense. It is irrelevant that he was guarded by a city police officer; what is important is that he was in custody for a state and not a city offense, and that he was not yet in the county jail only because of his injuries related to that offense. *Mohave.*

The county contends that our opinion in *Cochise County v. Arizona Health Care Cost Containment System,* 170 Ariz. 443, 825 P.2d 968 (App.1991), holding that an "inmate of a public institution" does not include one *en route* to the institution for booking and incarceration, is contrary to the trial court's ruling in the instant case. We disagree. In *Cochise,* we interpreted specific language of an AHCCCS regulation stating that an inmate of a public institution means a person incarcerated in the institution. As a result, we found it necessary to interpret the meaning of "incarcerated" in order to apply the regulation. However, the term "incarcerated" is not critical to the application of § 11–601(3), the decisive statute in this case. As noted above, § 11–601(3) does not impose a time requirement; as long as the elements of the statute are satisfied, the resulting expenses are a county charge. In this case, Lara was charged with and convicted of a crime, and committed therefor to the county jail as the statute requires. As a result, his medical expenses are the county's obligation.

Moreover, *Cochise* is further distinguishable because the issue there was whether AHCCCS, a governmental agency, or the county, likewise a governmental agency, was responsible for payment of an indigent's hospitalization costs. There, AHCCCS was held responsible based upon the statutory scheme and the AHCCCS director's regulations. In contrast, the issue here is whether the hospital or a governmental agency is responsible for a prisoner's care and custody. As a matter of public policy, *some* governmental agency must be responsible for Lara's care, particularly in light of the absence of any time constraints in the relevant statutes, and the fact that all elements of the statutes were ultimately satisfied. Accordingly, the expenses must be attributed to the appropriate governmental agency and not imposed upon the hospital.

 The county contends, in the alternative, that if we determine it is liable for Lara's medical expenses, we must allow it to pay a discounted amount ($113,584.73), and not the full charges billed ($160,953.27). A.R.S. § 11–297.01 authorizes reimbursement to the county at a discounted rate for medical care provided to "indigent" patients. The parties agree that Lara was not "indigent" at the time of his hospitalization. The county nonetheless argues that it is only authorized to pay for medical expenses at the reduced rate and that UMC has uniformly accepted payment for inmates (both indigent and non-indigent) at the discounted rate in the past. We are, however, bound by the statutes, which only allow for payment at the discounted rate for indigent patients. It is the legislature's role, not ours, to determine whether non-indigent patients should be afforded the discounted rate. Section 11–601(3) obligates the county to pay for Lara's

care, and in the absence of statutory support for a discounted rate, we have no choice but to affirm the trial court as a matter of law.

In light of our decision holding the county liable, we do not address UMC's cross-appeal against the City of Tucson. Affirmed.

ESPINOSA, P.J., and FLÓREZ, J., concur.