239 P.3d 733

CANYON AMBULATORY SURGERY CENTER, a North Carolina limited liability company, doing business as Canyon Surgery Center; and El Dorado Surgery Center, L.P., doing business as El Dorado Surgicenter, a foreign limited partnership, Plaintiffs/Appellants,

v.

SCF ARIZONA, Defendant/Appellee.

No. 1 CA–CV 09–0408.

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 16, 2010.

Gammage & Burnham P.L.C. By James A. Craft, Cameron C. Artigue, and Carolyn V. Williams, Phoenix, Attorneys for Plaintiffs/Appellants.

Sanders & Parks P.C. By Mark G. Worischeck, Debora L. Verdier and Shanks Leonhardt, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

BROWN, Judge.

¶ 1 Appellants Canyon Ambulatory Surgery Center ("Canyon") and El Dorado Surgery Center ("El Dorado") (collectively the "Surgery Centers") appeal the trial court's dismissal of their claims against SCF Arizona[1] ("SCF") for alleged violation of SCF's statutory and contractual obligations to pay workers' compensation benefits for services rendered on behalf of injured workers. The Surgery Centers also challenge the court's grant of partial summary judgment finding SCF exempt from the rulemaking requirements of the Administrative Procedures Act ("APA"). They further contend the court erred in granting judgment as a matter of law ("JMOL") in favor of SCF after an advisory jury found in favor of the Surgery Centers. Finally, the Surgery Centers challenge the sanctions awarded to SCF pursuant to

Arizona Rule of Civil Procedure 68. For the following reasons, we affirm.

## BACKGROUND

¶ 2 The Surgery Centers are two of approximately 150 ambulatory surgical centers ("ASCs") in Arizona that provide facilities for various outpatient medical and surgical procedures. SCF provides workers' compensation coverage to Arizona employers, which indemnifies employers for financial obligations imposed by Arizona's workers' compensation laws. Ariz.Rev.Stat. ("A.R.S.") § 23–981 (Supp.2009).[2] Between March 2003 and March 2007, the Surgery Centers treated 2100 workers who were entitled to benefits under SCF insurance policies for work-related injuries ("injured workers"). The Surgery Centers did not have a contract with SCF establishing billing rates for services provided to the injured workers,[3] so they billed SCF according to the rates listed in the Surgery Centers' chargemasters.[4]

¶ 3 Prior to March 2003, SCF paid the Surgery Centers the full amount billed. Thereafter, as part of its cost containment system, SCF hired Qmedtrix to review each bill submitted and recommend a reasonable reimbursement amount. Qmedtrix created a payment methodology based on reimbursements made by other carriers, which resulted in reduced payments to the Surgery Centers. As compensation for Qmedtrix's services, SCF paid Qmedtrix 25% of the recommended price reduction.[5]

¶ 4 Canyon filed a declaratory judgment action in December 2003 alleging that SCF's reimbursement methodology constituted a

---

1. SCF Arizona was previously known as the State Compensation Fund.

2. We cite the current version of the applicable statutes when no revisions material to this decision have since occurred.

3. The Industrial Commission of Arizona is required to establish a schedule of fees to be charged by medical providers for the services they provide to workers' compensation patients, but the fee schedule does not apply to ASCs. A.R.S. § 23–908(B) (Supp.2009). Thus, ASCs are free to negotiate contracts with individual carriers for reimbursement rates. Additionally, ASCs cannot "balance bill," or otherwise charge

a workers' compensation patient for any unpaid or uncovered balances remaining after insurance payments. Ariz. Admin. Code R20–5–117(B).

4. According to testimony presented at trial, a chargemaster is a comprehensive list of prices and charges adopted by many healthcare providers for services and supplies. The Surgery Centers based their chargemasters on those of other local surgery centers.

5. For example, if the Surgery Centers billed $100 for services and Qmedtrix recommended paying $60 of the bill, SCF would pay Qmedtrix 25% of the $40 price reduction, or $10.

"rule" under the APA, and was adopted in violation of the APA's notice and hearing requirements.[6] Canyon also sought a declaration that SCF was obligated to pay benefits in the amount of the charges billed. After cross-motions for summary judgment were filed concerning the applicability of the APA, the trial court entered partial summary judgment, rejecting Canyon's claim that SCF was subject to the APA rulemaking procedures.

¶ 5 In the meantime, El Dorado filed a separate declaratory judgment action in March 2004. After the trial court granted SCF's motion for partial summary judgment on the APA claim, the cases were consolidated.[7] The Surgery Centers then filed an amended complaint, omitting the prior declaratory judgment request and adding five new claims: (1) violations of statutory duties ("Count 1"); (2) implied contract/restitution ("Count 2"); (3) breach of policy benefits ("Count 3"); (4) bad faith by an insurer ("Count 4"); and (5) negligent misrepresentation ("Count 5"). SCF moved to dismiss all five counts for failure to state a claim upon which relief could be granted. Following argument, the court dismissed Counts 1 and 4 with prejudice and Count 3 without prejudice.

¶ 6 Trial commenced to an advisory jury on the two remaining claims—implied contract/restitution and negligent misrepresentation. The court subsequently dismissed the negligent misrepresentation claim pursuant to Arizona Rule of Civil Procedure 50. The advisory jury awarded damages to Canyon in the amount of $1,125,562 and to El Dorado in the amount of $1,082,501. SCF then filed a "renewed motion for JMOL," which the trial court granted, concluding that the Surgery Centers "have received the reasonable value of their services from SCF, if not more."

The Surgery Centers unsuccessfully moved for a new trial and then filed this appeal.[8]

## DISCUSSION

### I. Dismissal of Counts 1 and 3 under Rule 12(b)(6)

¶ 7 The Surgery Centers first argue the trial court erred in dismissing Counts 1 and 3. We review de novo a trial court's grant of a motion to dismiss for failure to state a claim. *Phelps Dodge Corp. v. El Paso Corp.*, 213 Ariz. 400, 402, ¶ 8, 142 P.3d 708, 710 (App.2006). We assume the allegations in the complaint are true, and will "uphold dismissal only if the plaintiff[ ] would not be entitled to relief under any facts susceptible of proof in the statement of the claim." *T.P. Racing, L.L.L.P. v. Ariz. Dep't of Racing*, 223 Ariz. 257, 259, ¶ 8, 222 P.3d 280, 282 (App.2009) (citation omitted).

### A. Count 1—Statutory Violations

¶ 8 As to Count 1, the Surgery Centers contend they pled a valid claim by asserting that "SCF is in continuing violation of its mandatory, non-discretionary duty to pay medical and surgical benefits[,]" citing A.R.S. §§ 23–1001 (1995), –1021(B) (Supp.2009), and –1062(A) (1995).[9] Those statutes state in pertinent part:

> Every employer insuring with an insurance carrier shall receive from such insurance carrier a contract or policy of insurance. A.R.S. § 23–1001.

> Every employee ... shall be entitled to receive and shall be paid such compensation from the state compensation fund for loss sustained on account of the injury or death, such medical, nurse and hospital services and medicines ... as are provided in this chapter. A.R.S. § 23–1021(B).

6. Ariz.Rev.Stat. §§ 41–1001 to –1092.12 (2004 & Supp.2009).

7. Cases filed by three other surgical centers were also consolidated. Their claims were later dismissed upon stipulation of the parties.

8. The Surgery Centers do not challenge on appeal the trial court's dismissal of Counts 4 (bad faith) and 5 (negligent misrepresentation).

9. On appeal, the Surgery Centers include an additional statute, A.R.S. § 23–1061(G) (Supp. 2009), to support their argument that together with §§ 23–1021(B), –1062(A), SCF is required to pay for services rendered.

[E]very injured employee shall receive medical, surgical and hospital benefits or other treatment ... reasonably required at the time of injury, and during the period of disability. A.R.S. § 23–1062(A).

¶ 9 It is undisputed that SCF unilaterally reduced the payments it had been previously making to the Surgery Centers. That action, however, does not constitute a violation of the cited statutes. *See* Ariz. R. Civ. P. 8(a)(2); *see also Rowland v. Kellogg Brown and Root, Inc.*, 210 Ariz. 530, 534, ¶ 15, 115 P.3d 124, 128 (App.2005) (recognizing that a complaint must set forth facts, that if proven, are sufficient to support a claim for relief as presented). Nowhere in the amended complaint do the Surgery Centers allege that (1) the injured workers' employers failed to receive a contract or policy of insurance from SCF, or that SCF failed to provide the same; (2) the injured workers were not paid compensation[10] for losses sustained on account of their injuries, or did not receive necessary medical treatment; or (3) such benefits and treatment were not provided at the time of injury and during the period of disability.

¶ 10 Attempting to overcome this facial defect, the Surgery Centers assert that the statutes cited, when read together with case law and in the greater context of the statutory scheme, create an obligation on the part of employers to not only provide medical treatment for injured workers, but also to pay for it.[11] Notably, SCF does not dispute its obligation to pay for the medical services provided to injured workers, and the Surgery Centers do not allege they have not been paid. The Surgery Centers' only contention is that they were "underpaid" for the services they rendered. However, nothing in the statutes cited, or in the arguments advanced by the Surgery Centers, supports a finding that SCF has violated a statutory

duty by paying less than the billed amount for services provided.

¶ 11 Because we conclude the Surgery Centers failed to allege facts sufficient to support a statutory violation claim, we need not address whether they had standing to bring such a claim or whether the superior court had jurisdiction over the claim.

**B. Count 3—Policy Benefits**

¶ 12 The Surgery Centers argue the trial court erred in dismissing Count 3, which alleged that SCF was in "breach of the insurance benefits promised [ ] for injured workers treated by [the Surgery Centers], [because] SCF has refused to pay those benefits." They contend that because each injured worker in this case assigned to the Surgery Centers his or her right to enforce payment of benefits, the Surgery Centers may directly enforce SCF's obligation to pay. Alternatively, the Surgery Centers claim they are third-party beneficiaries of the insurance policies sold by SCF.

¶ 13 SCF counters that dismissal was appropriate because the Surgery Centers failed to allege what policy benefits the injured workers were entitled to but did not receive. They also claim the assignments of benefits were invalid. In addition, SCF asserts Arizona law bars the Surgery Centers from being third-party beneficiaries of a contract. Moreover, it contends that none of the Surgery Centers' arguments have merit because the trial court dismissed the claim without prejudice and therefore the order is not appealable. We hold that the final point is decisive as to Count 3.

¶ 14 In general, "an appeal lies only from a final judgment." *McMurray v. Dream Catcher USA, Inc.*, 220 Ariz. 71, 74, ¶ 4, 202 P.3d 536, 539 (App.2009) (citation and internal quotation marks omitted). A dismissal without prejudice is not a final

---

10. A.R.S. § 23–901(5) (Supp.2009) defines "compensation" as "the compensation and benefits provided by this chapter."

11. As noted, *supra* n. 9, the Surgery Centers raise for the first time on appeal an alleged violation of A.R.S. § 23–1061(G), which provides that "the insurance carrier or self-insuring employer *shall process and pay* compensation and provide medi-

cal, surgical and hospital benefits, without the necessity for the making of an award or determination by the commission." (Emphasis added.) We generally do not consider issues raised for the first time on appeal. *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13, 13 P.3d 763, 768 (App.2000). Therefore, we decline to review the applicability of this statute.

judgment and is therefore generally not appealable. *See id.* (citing *L.B. Nelson Corp. of Tucson v. W. Am. Fin. Corp.*, 150 Ariz. 211, 217, 722 P.2d 379, 385 (App.1986)); *see also* A.R.S. § 12–2101(D) (2003). However, dismissal of an action without prejudice is appealable: (1) when the timely filing of another suit is barred by the statute of limitations; or (2) when the dismissal order is entered without leave to amend. *See McMurray*, 220 Ariz. at 74, ¶ 4, 202 P.3d at 539 (citing *State ex rel. Hess v. Boehringer*, 16 Ariz. 48, 51, 141 P. 126, 127 (1914)) (holding that a "dismissal without prejudice is not a final determination of the controversy on its merits, and is no bar to the prosecution of another suit timely commenced ... [but] [a]n appeal from such order may be prosecuted ... when such order in effect determines the action and prevents final judgment from which an appeal might be taken"); *see also Flynn v. Johnson*, 3 Ariz.App. 369, 373, 414 P.2d 757, 761 (1966) (order of dismissal appealable if entered without leave to amend or with prejudice).

¶ 15 Here, the Surgery Centers do not argue the statute of limitations had run on Count 3 or that a final judgment was entered from which they could have appealed. Nor do they contend they were prevented from amending the complaint or otherwise attempting to reassert the claim. In fact, the trial record indicates just the opposite. The trial court dismissed Count 3 without prejudice in January 2006, indicating that although fact issues had been raised regarding what the insurance policies provide, the court was nonetheless inclined to dismiss. At the same time, however, the court ordered the policies to be produced and informed counsel for the Surgery Centers that "[i]f there's additional arguments that the plaintiffs would like to make once they receive the insurance policies and have [had] a chance to review them and they would like to move for reconsideration of dismissal of Count 3, they may do so[.]"

¶ 16 The record is devoid of any effort by the Surgery Centers to move for reconsideration of this claim or otherwise assert its validity, despite being expressly invited to do so by the court. As such, the order of dismissal was not appealable and therefore we

lack jurisdiction over Count 3. *See L.B. Nelson Corp.*, 150 Ariz. at 217, 722 P.2d at 385 (finding that order dismissing without prejudice one count of multiple count complaint was not an appealable order). In light of our conclusion, we need not address the other grounds for dismissal advanced by SCF.

## II. Count 1—Statutory Violation of APA

■ ¶ 17 The Surgery Centers argue the trial court erred in granting summary judgment on their claim that SCF violated the APA rulemaking requirements. They contend that SCF, as a state agency, is subject to the provisions of the APA and that the Qmedtrix payment methodology is a de facto "rule" promulgated by SCF in violation of the APA's notice and hearing requirements.

¶ 18 A motion for summary judgment should be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We review a trial court's grant of summary judgment and matters of law involving statutory interpretation de novo. *Bentley v. Building Our Future*, 217 Ariz. 265, 270, ¶ 11, 172 P.3d 860, 865 (App.2007).

¶ 19 As the trial court noted, it is undisputed that SCF's adoption of a new pricing methodology was not done in compliance with the APA. The court determined, however, that APA compliance was unnecessary because the APA governs only those agencies that perform governmental functions, unlike the general business functions carried out by SCF, which are not governed the APA. We agree with the court's conclusion that SCF is not subject to the APA rulemaking requirements, but we reach our conclusion based on an alternative ground urged by SCF. *See Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 571, ¶ 21, 38 P.3d 1229, 1236 (App.2002) (noting that an appellate court may affirm the decision of the trial court if it reaches the right result even if based on different grounds).

¶ 20 Whether SCF is subject to the APA is a matter of statutory interpretation, the primary goal of which is to find and give effect to legislative intent. *Mail Boxes v. Indus.*

*Comm'n of Ariz.*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). When construing statutes, we begin with the language of the statute itself "because we expect it to be the best and most reliable index of a statute's meaning." *Bentley*, 217 Ariz. at 270, ¶ 12, 172 P.3d at 865 (internal quotations and citations omitted).

¶ 21 Regardless of whether SCF is a state agency subject to the APA, we are not persuaded that the use of the Qmedtrix methodology is a rule subject to APA notice and hearing provisions. A "rule" within the APA is defined as any agency statement that "implements, interprets or prescribes law or policy." A.R.S. § 41–1001(17) (Supp.2009). An entity's internal guidelines, however, are not rules. *Duke Energy Arlington Valley, LLC v. Ariz. Dep't of Rev.*, 219 Ariz. 76, 80, ¶ 18, 193 P.3d 330, 334 (App.2008).

¶ 22 In *Duke*, taxpayers who were operators of electric generation facilities sought a declaratory judgment to establish that depreciation tables for valuation of electric generation facilities adopted by the Department of Revenue were rules under the APA and thus subject to the relevant rulemaking requirements. *Id.* at 77, ¶ 2, 193 P.3d at 331. The tax court held that the tables were not rules. *Id.* at ¶ 3. We affirmed, concluding that the depreciation tables were not rules because they were referred to as guidelines in the statute and they were "only one element" used by the Department of Revenue in determining the statutorily mandated value of electric generation facilities. *Id.* at 78–79, ¶¶ 11, 15, 193 P.3d at 332–33.

¶ 23 Similar to the tax tables in *Duke*, the fee methodology at issue here is not a rule subject to the APA; it is merely a way to collect data to be considered in setting reimbursement amounts, in the exercise of SCF's

discretion. *See Shelby Sch. v. Ariz. State Bd. of Educ.*, 192 Ariz. 156, 167, ¶ 48, 962 P.2d 230, 241 (App.1998) (finding that the creditworthiness requirement for awarding charter school status was "merely an element to be considered by the Board" when making its decision and only "a method of obtaining data"); *cf. Sw. Ambulance v. Ariz. Dep't of Health Servs.*, 183 Ariz. 258, 261, 902 P.2d 1362, 1365 (App.1995) (concluding that rate schedule was a rule because in addition to setting rates, the schedule described procedures on how fractions of an hour were to be charged, how mileage was to be charged, what constituted a minimum charge, and when a rate for advanced life support could be charged) *superseded by statute on other grounds as recognized by Phoenix Children's Hosp. v. Ariz. Health Care Cost Containment Sys.*, 195 Ariz. 277, 987 P.2d 763 (App. 1999). Here, the record reflects that the information provided by Qmedtrix to SCF is intended as a "recommendation" of how much SCF should pay based on Qmedtrix's estimation of what is a reasonable charge.[12] SCF is under no obligation to adopt the recommendations of Qmedtrix; it simply uses the information provided to guide its reimbursement decisions.[13]

¶ 24 In addition, applicable statutory authority provides that SCF does not adopt rules regarding workers' compensation matters; those rules are promulgated by the Industrial Commission of Arizona ("ICA"). A.R.S. § 23–107(A) (Supp.2009) (granting the ICA "full power, jurisdiction, and authority to ... [f]ormulate and adopt rules and regulations for effecting the purposes of this article" including acting "as the regulatory agency insuring that workers' compensation carriers are processing claims in accordance with chapter 6 of this title").[14] The "rulemaking authority" of the SCF is limited to

**12.** Moreover, after the court granted SCF partial summary judgment on this issue, the Surgery Centers conceded that calculations made by Qmedtrix are recommendations when they stipulated in the joint pretrial statement that "SCF has paid Canyon and El Dorado the amounts that were recommended by Qmedtrix."

**13.** This conclusion is further supported by the fact that SCF, on at least one occasion, informed Qmedtrix of SCF's disagreement with Qmedtrix's

reimbursement recommendations for particular medical services and Qmedtrix adjusted its reimbursement methodology accordingly. SCF's decision to adopt the vast majority of Qmedtrix's reimbursement recommendations during the time frame at issue does not change our analysis.

**14.** Chapter 6 of Title 23 is A.R.S. §§ 23–901 to – 1091 (1995 & Supp.2009) (Workers' Compensation).

two circumstances. The SCF Board of Directors may adopt rules "for the conduct of its business[.]" A.R.S. § 23–981.01(A) (1995). The SCF manager may also "adopt rules for the collection, maintenance and disbursement of the fund[.]" A.R.S. § 23–981(C). Neither of these rulemaking categories is subject to the APA requirements because both involve matters "concerning only the internal management of [SCF] that do[ ] not directly and substantially affect the procedural or substantive rights or duties of any segment of the public."[15] A.R.S. § 41–1005(A)(4) (Supp.2009) (listing the rules and fees that are exempt from APA requirements).

¶ 25 The Surgery Centers cite three cases in support of their argument that prescribing reimbursement amounts for healthcare providers is tantamount to "rulemaking" under the APA. *Ariz. Soc'y of Pathologists v. Ariz. Health Care Cost Containment Sys. Admin.*, 201 Ariz. 553, 38 P.3d 1218 (App.2002); *Sw. Ambulance*, 183 Ariz. at 258, 902 P.2d at 1362; *Carondelet Health Servs., Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 182 Ariz. 221, 895 P.2d 133 (App.1994). We find these cases inapposite. Each of them involved a state agency expressly empowered to promulgate rules governing the administration of those agencies, including prescribing fees and amending or repealing prior rules. *See Pathologists*, 201 Ariz. at 555, ¶ 6, 38 P.3d at 1220; *Sw. Ambulance*, 183 Ariz. at 260, 902 P.2d at 1364; *Carondelet*, 182 Ariz. at 226, 895 P.2d at 138. Moreover, in each case, the agency in question intended to establish an exclusive and universally applied reimbursement scheme pursuant to its statutory authority. *See Pathologists*, 201 Ariz. at 557, ¶ 20, 38 P.3d at 1222 (state agency conceding new reimbursement methodology was a rule promulgated in accordance with statutory authority but arguing separate statutory authority existed for adopting rule thereby eliminating requirement to comply with APA); *Sw. Ambulance*, 183 Ariz. at 260, 902 P.2d at 1364 (recognizing that the legislature delegated the responsibility for regulating ambulance companies to the Department of Health Services and the department intended to establish rates and charges for ambulance companies as required by statute when it adopted the rates and charges at issue); *Carondelet*, 182 Ariz. at 227, 895 P.2d at 139 (finding that the Arizona Health Care Cost Containment System ("AHCCCS") reimbursement methodology was intended to "implement" session law and amend a rule previously adopted by AHCCCS pursuant to its authority to do so).

¶ 26 In sum, we find the Qmedtrix methodology employed by SCF to inform its decisions regarding reasonable reimbursement amounts to health care providers is not a rule within the meaning of the APA. Consequently, the trial court did not err in granting SCF's motion for partial summary judgment as to the non-applicability of the APA.

## III. Judgment as a Matter of Law

¶ 27 The Surgery Centers argue the trial court erred in granting JMOL[16] because the advisory jury's verdict regarding restitution was reasonable in light of the evidence pre-

---

**15.** Furthermore, the rules adopted by the SCF Board of Directors under A.R.S. § 23–981.01(A) are not subject to the APA because the Board has discretion in publishing and distributing such rules. § 23–981.01 (stating that the board *"may* cause them to be published and distributed"). (emphasis added). In contrast, A.R.S. §§ 41–1003 (2004), –1012 (2004) of the APA provide that rules *must* be published. (Emphasis added.) *See Saenz v. State Fund Workers' Comp. Ins.*, 189 Ariz. 471, 474, 943 P.2d 831, 834 (App.1997) (recognizing that courts construe provisions of statutes "to harmonize rather than contradict one another 'if sound reasons and good conscience allow' ").

**16.** We note that SCF's decision to title its pleading a "Renewed Motion for JMOL" seems mis-

placed because no judgment had been entered on the Surgery Centers' restitution claim. The jury had rendered its advisory verdict, but the ultimate trier of fact, the trial court, had not entered judgment or otherwise indicated how it intended to rule. *See* Ariz. R. Civ. P. 39(n) (stating that determinations made by advisory juries shall be only advisory to the court); *Graham v. Shooke*, 107 Ariz. 79, 80, 482 P.2d 446, 447 (1971) (noting that when a court uses an advisory jury the court is still responsible for the ultimate questions of law and fact). In any event, as explained, *infra* ¶ 28, our analysis presumes that the trial court properly recognized the role of the advisory jury.

sented.[17] SCF counters that JMOL was proper because the payments it made exceeded the reasonable value of the services provided.

¶ 28 Generally, we review the grant of a motion for JMOL de novo. However, because neither side requested that the trial court make specific findings of fact and conclusions of law pursuant to Rule 52(a), and the court did not *sua sponte* make detailed findings, we "presume the trial court found every fact necessary to support its judgment and we will affirm if any reasonable construction of the evidence justifies it." *Garden Lakes Cmty. Ass'n, Inc. v. Madigan,* 204 Ariz. 238, 240, ¶ 9, 62 P.3d 983, 985 (App. 2003) (citations omitted). Moreover, although an advisory jury heard the evidence and recommended awarding damages to the Surgery Centers, "it is the findings and judgment of the court that are presumed to be correct rather than the jury's [recommendation]." *Id.* at 240–41, ¶ 9, 62 P.3d at 985–86 (citations omitted); Ariz. R. Civ. P. 39(n) (stating that answers to special interrogatories "shall be only advisory to the court").

¶ 29 For the Surgery Centers to prevail on their restitution claim, they were required to prove SCF paid less than a reasonable amount for their services, in which case they could recover the difference under a theory of *quantum meruit* or unjust enrichment. *See City of Sierra Vista v. Cochise Enters., Inc.,* 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App.1984) (acknowledging that the doctrine of *quantum meruit* is based on the concept that a person shall not be unjustly enriched by obtaining or retaining money or benefits that properly belong to another); Restatement (First) Restitution, § 1 (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."). To prove the reasonable value of their services, the Surgery Centers were required to demonstrate either (1) the fair market value of their services; or (2) the actual cost to them to provide the services plus a reasonable rate of return. *Murdock–Bryant Constr., Inc. v. Pearson,* 146 Ariz. 57, 66–67, 703 P.2d 1206, 1215–16 (App.1984), *aff'd in relevant part by* 146 Ariz. 48, 55, 703 P.2d 1197, 1204 (1985); *see also Turnkey Corp. v. Rappeport,* 149 Ariz. 514, 516, 720 P.2d 115, 117 (App.1986).

¶ 30 At trial, the Surgery Centers presented evidence that their billed charges were in line with what other ambulatory surgery centers charged. They also presented some evidence of the industry custom to pay billed charges absent a contract to the contrary. The Surgery Centers thus argued they were entitled to payment of their billed charges for services rendered. Alternatively, they argued that short of full payment, the reasonable fair market value of their services could be ascertained by the average amount they receive from other workers' compensation payors, which they estimated at between 72–76% of the charges billed. SCF, on the other hand, presented evidence that the majority of the Surgery Centers' payors pay significantly less than billed charges. SCF argued that the overall payment rate from all payors was a more realistic estimation of fair market value for the Surgery Centers' services.

**17.** At oral argument before this court, the Surgery Centers also argued JMOL was improper because the trial judge did not expressly state he was acting as the trier of fact after the jury had been empanelled for that purpose. They also asserted that after the jury returned its verdict SCF did not seek a verdict from the judge, but instead improperly sought JMOL under Rule 50, which the judge granted. Ariz. R. Civ. P. 50. The Surgery Centers concede, however, that they did not raise these arguments in their briefs on appeal. Indeed, a review of the record reveals this argument was not raised before the trial court either. SCF stated in its Motion for JMOL that "[t]he Court must ultimately make the findings of fact and conclusions of law in this case in equity[.]" Despite such an assertion, the Surgery Centers made no objection in their opposition to JMOL, their motion for new trial, or their opening brief on appeal. Although the Surgery Centers make a fleeting statement in their reply brief that the trial court did not act as the finder of fact, no argument was presented on this issue in any of the briefs before us and we therefore consider the issue abandoned. *See State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) ("[O]pening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment ... of that claim."); *Best v. Edwards,* 217 Ariz. 497, 504 n. 7, ¶ 28, 176 P.3d 695, 702 n. 7 (App.2008) (a party cannot raise an issue for first time in a reply brief).

¶ 31 At the end of the trial, the advisory jury returned a "verdict" in favor of the Surgery Centers, awarding damages equal to 70% of their total billed charges. SCF filed a renewed JMOL motion on the Surgery Centers' restitution claim. After further briefing and argument, the trial court granted the motion, reasoning in part as follows:

[The Surgery Centers] asked for 100% of the charges they billed. The advisory jury recommended judgment of 70% of [the Surgery Centers'] billed charges. It is difficult to find the rationale for this recommendation; i.e., why not 90%, 72%, 68%, or 49%? The only thing the court knows for certain is that the jury found that 100% of [the Surgery Centers'] billed charges are not the reasonable value of their services.

The court then determined that because workers' compensation payments constituted only 12–14% of all the Surgery Centers' income, the correct standard for establishing the fair market value of services was not "list price," but "what a seller actually accepts from a willing buyer." The court concluded that the "true measure of the reasonable value of [the Surgery Centers'] services" is found in the fact that "Canyon accepts 30% or less of its billed charges from 82% of its patients' insurers and El Dorado accepts less than 24% of its billed charges from 89% of its patients' insurers." The court therefore held that the payments made by SCF, which exceeded 40% of the billed charges, were reasonable under the circumstances.

¶ 32 The Surgery Centers argue the trial court's determination of the reasonable fair market value of its services conflicts with the principles espoused in Arizona case law. Specifically, they contend Title 23 claims should operate under the same principles governing health care reimbursements in other contexts—that absent a contract or

statute to the contrary, payors must pay the billed price for services rendered. They rely on *University Medical Center, Corp. v. Pima County* to argue that when a statute creates an obligation to reimburse a health care provider, but does not create a discount, the obligation is to pay "list price." 188 Ariz. 453, 937 P.2d 375 (App.1996).

¶ 33 In *University Medical,* Pima County argued it should not be liable for the "full billed" amount of hospital expenses incurred for the care of a felon in its custody. *Id.* at 454, 937 P.2d at 376. The county claimed it was only authorized to pay for medical expenses at a reduced rate and furthermore the medical center had uniformly accepted such discounted payments in the past. *Id.* at 455, 937 P.2d at 377. The ultimate question presented was whether the statutory discount for indigent patients in the county's care was applicable to the facts presented. We concluded it was not and held only that "in the absence of statutory support for a discounted rate," a discount for hospital services could not be judicially mandated. *Id.* at 455–56, 937 P.2d at 377–78.[18] *University Medical* did not involve a claim for restitution; we neither addressed the reasonableness of the charges billed by the hospital nor did we consider the propriety of any reimbursements made in relation thereto. *Id.* at 454, 937 P.2d at 376.

¶ 34 Here, the Surgery Centers' claim for restitution does not rest on the applicability of a statutorily mandated discount, but rather on the Surgery Centers' ability to demonstrate that the reasonable value of its services exceeded the amount SCF paid for them. The record reflects that the trial court considered the evidence presented and concluded the reasonable value of the Surgery Centers' services was best measured by the overall rate of payment accepted from

**18.** The Surgery Centers also cite *Banner Health v. Medical Savings Ins. Co.* to illustrate a general duty to pay "list price" for products and services absent an agreement to the contrary. 216 Ariz. 146, 163 P.3d 1096 (App.2007). In *Banner,* however, the patients signed "conditions of admission" contracts with the hospital prior to admission agreeing to be responsible for their "bill" and to "pay the[ir] account." *Id.* at 151, ¶ 17, 163 P.3d at 1101. We concluded that when the

patients entered such agreements, they agreed to pay the hospital's billed charges in accordance with the hospital's filed rates, notwithstanding that the hospital often accepted less than the filed rate from insurance carriers and others in satisfaction of billed charges. *Id.* at ¶ 18. Because no evidence was presented regarding the contents of the admission contracts in this case, and because the injured workers cannot be balance billed, *Banner* is not controlling here.

other payors for the same services. We hold that the court's conclusion is supported by a reasonable construction of the evidence.

## IV. Rule 68 Sanctions

¶ 35 The Surgery Centers contend the trial court erred in awarding sanctions pursuant to Arizona Rule of Civil Procedure 68. "We review the meaning and effect of a court rule de novo." *Girouard v. Skyline Steel, Inc.*, 215 Ariz. 126, 133, ¶ 24, 158 P.3d 255, 262 (App.2007) (citation omitted). Rule 68 provides that "any party may serve upon any other party an offer to allow judgment to be entered in the action." Ariz. R. Civ. P. 68(a). If the offer is rejected and a more favorable judgment is not obtained at trial, the offeree must pay sanctions pursuant to Rule 68. Ariz. R. Civ. P. 68(g).

¶ 36 The Surgery Centers cite *Acceptance Indem. Ins. Co. v. Southeastern Forge, Inc.* in support of their assertion that the judgment here did not include all claims between the parties and thus Rule 68 sanctions cannot be applied. 209 F.R.D. 697, 699 (M.D.Ga. 2002). We find *Acceptance Indemnity* inapposite because it involved a Rule 68 offer where not all of the parties agreed to the offer. *Id.* The court there explained that in such cases, Rule 54(b) required the court to determine that "there is no just reason for delay" of a judgment and to make "an express direction for the entry of judgment" in order for such judgment to be "final." *Id.* at 700. The court then recognized that although a judgment would not be final as to parties that did not participate in the judgment, there is no "reason why it would be impermissible to enter a judgment pursuant to Rule 68 that involves less than all of the claims or parties." *Id.*

¶ 37 Unlike the situation in *Acceptance Indemnity*, it is undisputed that SCF made an offer of judgment to all the involved parties and that the offer was directed to all claims that were subject to the instant litigation. Because the Surgery Centers continued to accept and treat injured workers following the filing of the claims at issue here,

the parties stipulated to the time period for which billing would be subject to scrutiny in this case.[19] During the pendency of the trial court proceedings, SCF served each plaintiff with an offer of judgment as to its claims during the stipulated period. The Surgery Centers rejected these offers and trial proceeded. At the conclusion of the trial, the court entered judgment, pursuant to Rule 54(b), in favor of SCF on all claims litigated and arising out of the time period to which the parties stipulated. The judgment was not more favorable to the Surgery Centers than the offers made by SCF. Simply because other, thus far unlitigated claims may exist does not change the finality of the judgment of the claims at issue here. Consequently, the court properly awarded sanctions pursuant to Rule 68.

## CONCLUSION

¶ 38 Based on the foregoing, we affirm the judgment of the trial court.

CONCURRING: JON W. THOMPSON and SHELDON H. WEISBERG, Judges.

---

**19.** The parties agreed to litigate at trial all bills from the Surgery Centers between March 1, 2003 and March 31, 2007.