NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEVEN R. GRAY, ED.D,
*Plaintiff/Appellant*,

v.

STATE OF ARIZONA BOARD OF PSYCHOLOGIST EXAMINERS,
*Defendant/Appellee*.

No. 1 CA-CV 19-0337

FILED 3-26-2020

Appeal from the Superior Court in Maricopa County
No.  CV2016-012091
The Honorable Lori Ash, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Renaud Cook Drury Mesaros, PA, Phoenix
By Steven G. Mesaros, Charles S. Hover, III
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael Raine
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**W E I N Z W E I G**, Judge:

¶1 Dr. Steven Gray appeals the superior court's order declining special action jurisdiction and denying declaratory relief. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The Arizona Board of Psychologist Examiners (the "Board") licenses and regulates the practice of psychology in Arizona. The Board licensed Dr. Gray to practice psychology in 1976. As relevant here, Dr. Gray's practice "consists primarily of the evaluation, treatment and psychoeducation of persons" charged with or convicted of criminal sexual offenses in Arizona.

¶3 In April 2016, the Board received an anonymous complaint from "A Concerned Citizen" about Dr. Gray's alleged "unethical practices" and "exploit[ation]" of psychology students, warning the alleged conduct "could create a dangerous situation that puts someone's safety at risk." The complaint asked the Board to investigate Dr. Gray's overreliance on students to "provide treatment to specialized groups" without proper knowledge or supervision, which "is more worrisome because the patients under his care are sex offenders." The complaint suggests the Board might get more information from either the probation department or Dr. Gray's student assistants and patients, unless afraid of retaliation.

¶4 The Board sent a copy of the complaint to Dr. Gray with an explanation of the process going forward. Dr. Gray first needed to "respond to the allegations in as much detail as possible" and provide any relevant patient records. From there, the Board's "Complaint Screening Committee" would consider the matter in July 2016 and "either vote to dismiss the case if it determines that there is no evidence of violation of statute or rule, or refer the complaint to the full Board for further review and action, or conduct additional investigation." The Board "assure[d]" Dr. Gray that an investigation does not "imply the presumption of unprofessional conduct on your part," and explained the Board needs to

2

"fairly and thoroughly process all requests for investigation in accordance with its legislative mandate."

¶5        Dr. Gray responded through counsel in a letter to the Board, "object[ing]" to the anonymous complaint as "violat[ing] the guarantees of due process and equal protection" because Dr. Gray cannot "assess the knowledge and bias" of the complainant, and describing the allegations as "so vague and generalized that an informed response is nearly impossible to provide." Dr. Gray argued that anonymous complaints "make[] it more difficult to show that the Board lacks jurisdiction to entertain [the complaint] under A.R.S. § 32-2081(B) if it was brought by" a sex offender, which "can be inferred" because the complaint states that "patients under his care are sex offenders." Even so, Dr. Gray "unequivocally denie[d] engaging in any unethical practices" and explained how his practice uses and supervises students.

¶6        The Board invited Dr. Gray to attend the Complaint Screening Committee meeting in July 2016. He did not attend. The Board then voted to reschedule the screening meeting to August 10, and again asked Dr. Gray to attend. But on August 9, one day before the rescheduled screening meeting, Dr. Gray sued the Board for special action relief in the superior court, alleging "[t]he Board's refusal to dismiss [the anonymous] Complaint . . . was arbitrary and capricious or an abuse of discretion." Dr. Gray alleged the Board's "enabling statutes do not grant it the right to accept, investigate and adjudicate [anonymous] complaints," and "[t]he Board's refusal to dismiss [the anonymous] Complaint" violated his due process rights and A.R.S. § 41-1010. He also requested a declaratory judgment that the Board's "practice of accepting, investigating and adjudicating complaints filed against licensed psychologists by unidentified complainants" represents an invalid "rule" under the Administrative Procedure Act (the "APA"). *See* A.R.S. §§ 41-1034(B), -1030(A), (C).

¶7        The superior court granted Dr. Gray's request to stay the administrative proceeding pending the special action. *See* A.R.S. § 12-911(A)(1). Dr. Gray moved for summary judgment, arguing "that the [Board] lacks authority to accept and investigate anonymous complaints." The Board moved for judgment on the pleadings. The court ruled against Dr. Gray, declining special action jurisdiction and denying declaratory relief because (1) Dr. Gray had "an adequate and timely remedy in this case [and] has not yet availed himself of the Board's process," and (2) the Board could investigate anonymous complaints and no Board rule was necessary. Dr. Gray timely appealed. We have jurisdiction under A.R.S. § 12-120.21(A)(1) and (A)(4).

## DISCUSSION

Dr. Gray argues the superior court erred by declining special action jurisdiction and denying his request for declaratory judgment.

### I.     Special Action Jurisdiction.

¶8     Dr. Gray first argues the superior court erred by declining special action jurisdiction to decide whether the Board may accept anonymous complaints. We review the declination of special action jurisdiction for an abuse of discretion. *Stapert v. Ariz. Bd. of Psychologist Exam'rs*, 210 Ariz. 177, 182, ¶ 22 (App. 2005). Special action relief is extraordinary relief and the decision to accept or decline special action jurisdiction is highly discretionary. *Pompa v. Superior Court*, 187 Ariz. 531, 533 (App. 1997). "Jurisdiction is generally accepted only in those cases in which 'justice cannot be satisfactorily obtained by other means.'" *Id.* (quoting *King v. Superior Court*, 138 Ariz. 147, 149 (1983)).

¶9     The superior court declined special action jurisdiction because Dr. Gray had ignored an "adequate and timely remedy" through the administrative process. Dr. Gray counters that special action jurisdiction was essential because the Board's enabling statute specifically prohibits the Board from accepting or investigating anonymous complaints of unprofessional conduct against psychologists "arising out of a judicially ordered evaluation, treatment or psychoeducation of a person charged with [sex crimes] . . . unless the court ordering the evaluation has found a substantial basis to refer the complaint for consideration by the board." A.R.S. § 32-2081(B).

¶10     The superior court got it right. The Board's enabling statute directs the Board to form a "complaint screening committee" that "*shall* review *all* complaints" before deciding whether to dismiss the complaint or refer it to the board "based on the information provided." A.R.S. § 32-2081(H) (emphasis added). But Dr. Gray sued before the complaint screening committee could perform its statutory duty and before it even met to consider the complaint or determine whether it "aris[es]" from a court-ordered evaluation, treatment or psychoeducation of a sex offender. Dr. Gray could have raised his present arguments directly to the screening committee, which twice asked him to attend and postponed its threshold consideration of the complaint when he did not. He could have explained that much of his practice is devoted to sex offenders and sex crimes, which means the Board must first ensure the complaint can proceed without a

court order.  Because he did not, the superior court did not abuse its discretion.

¶11       Dr. Gray's argument that the Board's investigation of anonymous complaints "violate[s]" A.R.S. § 41-1010 fails on similar grounds.  Section 41-1010 provides that "the name of the complainant shall be a public record *unless* the affected agency determines [that such] may result in substantial harm to any person."  *Id.* (emphasis added).  As noted, Dr. Gray sued the Board before it could investigate or consider the issue.

¶12       Dr. Gray next argues that forcing him to defend against an anonymous complaint violates his due process and equal protection rights, alleging "that it precludes him from ascertaining the credibility of the complainant."  But the statute commands that the Board "shall not disclose the name of the person providing information unless this information is essential to proceedings."  A.R.S. § 32-2081(E).  And here again, Dr. Gray refused an invitation to appear before the complaint screening committee, where he could have argued that the complainant's name "is essential to proceedings" and he cannot formulate an intelligent defense without that information.

¶13       Although an anonymous complaint may harm due process rights, warranting special action relief, Dr. Gray has not shown that's what happened here.  He did not even attend the complaint screening committee meeting to assert or establish the argument, leaving the superior court and this court without sufficient information to evaluate his generalized due process claim.  The superior court recognized that the Board had yet to even assess whether the complaint came within its regulatory authority.  *See Carrington v. Ariz. Corp. Comm'n*, 199 Ariz. 303, 305, ¶ 8 (App. 2000) ("[An agency] must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the [agency's] regulatory authority.") (citation and quotation marks omitted).

¶14       And last, we reject any general, facial challenge to the Board's jurisdiction to hear anonymous complaints.  The legislature created the Board of Psychologist Examiners and imbued it with statutory authority to, among other things, review all complaints and investigate all evidence "that a psychologist is psychologically incompetent, guilty of unprofessional conduct or mentally or physically unable to safely engage in the practice of psychology."  A.R.S. § 32-2081(A), (H) ("The board, on its own motion, may investigate evidence that appears to show that a psychologist is . . . guilty of unprofessional conduct," and "any other person

may[] report to the board information that appears to show that a psychologist is . . . guilty of unprofessional conduct.").

**¶15**     We find no abuse of discretion.

## II.     Declaratory Judgment Action Under A.R.S. § 41-1034(B).

**¶16**     Dr. Gray separately argues the superior court erroneously denied his request for declaratory judgment because the Board's "practice of accepting, investigating and adjudicating [anonymous] complaints" is a "de facto rule." We review de novo whether agency action is a "rule" under the APA. *Ariz. State Univ. ex rel. Ariz. Bd. of Regents v. Ariz. State Ret. Sys.*, 237 Ariz. 246, 250, ¶ 14 (App. 2015).

**¶17**     The APA allows any person "affected by an existing agency practice or substantive policy statement that the person alleges to constitute a rule [to] obtain a judicial declaration on whether the practice or substantive policy statement constitutes a rule by filing an action for declaratory relief in the superior court." A.R.S. § 41-1034(B). The APA defines a "rule" as "an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency." A.R.S. § 41-1001(19).

**¶18**     The Board's practice of accepting and screening anonymous complaints is not a "rule" under the APA. The Board has no written or formal rule or statement on the subject. *See, e.g.*, *Ariz. State Ret. Sys.*, 237 Ariz. at 249, ¶ 6 (challenging System's written "Policy on Employer Early Termination Incentive Programs"); *Ariz. Soc'y of Pathologists v. Ariz. Health Care Cost Containment Sys. Admin.*, 201 Ariz. 553, 555, ¶ 4 (App. 2002) (challenging AHCCCS policy statement announcing that it would follow Medicare guidelines). At most, the Board's investigation of anonymous complaints is merely "part of the information-gathering process necessary to enable the Board to make decisions" and a "method of obtaining data" that "aid[s] it in exercising its discretion." *Shelby Sch. v. Ariz. State Bd. of Educ.*, 192 Ariz. 156, 167, ¶ 48 (App. 1998).

**¶19**     We do not accept the superior court's reasoning that the practice is not a rule because "no rule is required for the Board to investigate all complaints, including anonymous complaints." Because we reach the same holding, however, we affirm. "We will affirm the court's decision if it is correct for any reason, even if that reason was not considered by the trial court." *Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112 (App. 1997).

## CONCLUSION

**¶20** We affirm the superior court's order. Because he did not "prevail[] by an adjudication on the merits," we deny Dr. Gray's request for attorney fees and expenses under A.R.S. § 12-348(A)(3) and (4). *See White Mountain Health Ctr. v. Maricopa Cty.*, 241 Ariz. 230, 253, ¶ 87 (App. 2016). His request for appellate costs under Arizona Rule of Civil Appellate Procedure 21(a) is likewise denied. *See Braillard v. Maricopa Cty.*, 224 Ariz. 481, 499, ¶ 60 (App. 2010).



AMY M. WOOD • Clerk of the Court
FILED:   AA