# Supreme Court of Texas

No. 24-0782

Ryan Busse, Josh Klostermann, Russel Klostermann, Layne Klostermann, Mitch Thomas, Olivia Rincones, Robert Rincones, Ruben Rincones, Enrica Rincones, Angelita Garcia, Adelaida Garcia, Aniceto Garcia, Betty Garcia, Railey Rincones, Gary Busse, Alison Savage, and Lyford Consolidated Independent School District,

*Petitioners*,

v.

South Texas Independent School District,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

JUSTICE YOUNG, with whom Justice Devine, Justice Sullivan, and Justice Hawkins join, concurring.

I gladly join the opinion of the Court, which emphasizes that courts should adjudicate cases when a plaintiff satisfies the traditional requirements for standing and should not allow collateral matters to be smuggled into that standing analysis. Less abstractly, when a plaintiff asserts a direct injury that is caused by the conduct he challenges and is

remediable by the judicial relief he demands, his standing is secure. As a general matter, that should be the end of it. The law of standing is complicated enough without larding it with extraneous matters, such as whether a win on the merits would pose a great inconvenience to the government. Plenty of other doctrines deal with *how* courts should rule, and many of them give the government a substantial edge. The antecedent question of whether *the named plaintiff* has the requisite stake to invoke judicial power is all that the standing doctrine concerns. The Court today does a great service by enhancing the internal coherence and integrity of the law of justiciability in Texas.

Protecting the law of standing does not just mean eliminating vestigial and improper requirements; it also means being ready to restore essential requirements that have in practice been allowed to erode or decay. To that end, I note that the Court's clean resolution of the dispute before us may come at a delayed reckoning with the concept of "taxpayer standing," which the Court references in footnote four. *See ante* at 11 n.4. This concept has some basis in our precedents, of course, but our precedents' most important relevant teaching is the fundamental requirement that courts honor the separation of powers by rooting justiciability doctrines in the Constitution. *See, e.g.*, *Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 867, 871 (Tex. 2025). Justiciability limitations exist because the judiciary is not always a proper decisionmaker. The promise of self-government limits the role of the judiciary over disputes that, at their core, implicate only generalized objections that any citizen could make to governmental decisions or actions. *See id.* at 869. Such objections are not justiciable unless governmental

2

conduct injures *an individual* in a way that causes legally cognizable and distinct harm *to that individual*. Otherwise, no matter how much he dislikes it, his objection to governmental choices should be directed to the other two branches, including through the ballot box.

Directing those objections to the courts, by contrast, aggrandizes the power of the courts in an especially insidious way: it robs the People and their representatives of both the power *and the duty* to struggle over and ultimately resolve disputes that sound in policy and politics. Having the courts resolve any dispute about the meaning of the law or the wisdom of government action may be satisfying for the victor in his moment of triumph. But the roots of self-governance are damaged every time that happens. Relying on "taxpayer standing" for authority to resolve a matter of public policy can get dangerously close to releasing an advisory opinion. One reason that the Texas judiciary so thoroughly repudiates its own authority to issue advisory opinions is that doing so impairs and forestalls the work of the other branches and of the People. *See, e.g., id.* at 871–72.

Properly understood, our taxpayer-standing cases likely pose no serious threat to the Constitution's limitations and do not encroach upon the prerogatives of the political branches or the rights of the People to use the political process to resolve disputes. For example, suits against local governments constitute the bulk of cases that invoke the concept of "taxpayer standing." Such suits are materially different in kind from suits against State entities or officials because local governments have sprung from *corporate* law, which is why Article XI of the Constitution is entitled "Municipal Corporations." While it does not follow that *any* suit against a local government is permissible, it at least means that there may be *some*

3

areas in which the "corporation" is answerable in ways that the government more generally is not. Cases like *Perez v. Turner*, 653 S.W.3d 191 (Tex. 2022), for example, reflect the special obligations of municipal corporations.

Likewise, "taxpayer standing" may be an imprecise or mistaken label. Cases that invoke the words "taxpayer standing" may in fact involve plaintiffs who assert genuine and personal stakes sufficient to invoke the judicial power without that label adding anything. This case is one such example. There are many others. Even our recent decision in *Perez* was at its heart about the illegal collection of tax funds, not merely a contention by a taxpayer that the city was spending money unlawfully. *Id.* at 200.

A separate doctrine of "taxpayer standing" is no more necessary for someone trying to avoid paying an illegal tax than a separate doctrine of "property-owner standing" is necessary for someone demanding just compensation for a taking. The general rules of constitutional standing authorize both suits because both plaintiffs allege an individualized injury traceable to the defendant and redressable by a judgment; neither suit needs an "exception." Our cases, indeed, never have required any such "exception" for a plaintiff to challenge the collection of an unlawful tax. *See, e.g.*, *Shaw v. Phillips Crane & Rigging of San Antonio, Inc.*, 636 S.W.2d 186, 188 (Tex. 1982) ("So long as there exists between the taxpayer and the Tax Assessor-Collector a legitimate controversy over the amount of the taxes" owed, "the taxpayer may bring a suit to enjoin the collection of the alleged illegal taxes pending a hearing on the legality of same."); *Davis v. Burnett*, 13 S.W. 613, 614 (Tex. 1890) (concluding that a plaintiff may sue to enjoin the unlawful collection of funds); *Morris v. Cummings*, 45 S.W. 383, 385 (Tex. 1898) (same) (collecting early cases).

Many taxpayers may challenge the same tax; a single government project may affect many property owners. Even so, any given plaintiff's claim is still tethered to his own, distinct injury. It would therefore be a grave mistake to (1) properly find constitutional standing in a case where the parties mistakenly call it "taxpayer standing" and then (2) improperly exercise judicial power in a future case where constitutional standing is lacking by bootstrapping the "taxpayer standing" label from the first case.

Today's case does not require me to take a firm position on the merits of any further application of what is called "taxpayer standing." If we ever confront a case in which that theory alone purports to justify the exercise of judicial authority, and in which it cannot be explained under one of the two grounds I have described, we will have time enough to consider the question. When we do, I hope it will come with the able assistance of lower courts, the bar, amici, and scholars. *Cf., e.g., Turner v. Robinson*, 534 S.W.3d 115, 130–31 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (Busby, J., concurring) (identifying sources that likely will be relevant to the analysis). But our need to do so may be greatly lessened if the Court's main teaching today is followed with rigor: that parties and courts should not label as "taxpayer standing" that which is covered by the true and orthodox test for constitutional standing.

Evan A. Young
Justice

**OPINION FILED:** May 8, 2026

5